In the Matter of the FEE AGREEMENT OF William G. SMITH in Case Number 91–488.

In the Matter of the FEE AGREEMENT OF Hugh D. COX, Petitioner.

In the Matter of the FEE AGREEMENT OF Bruce Tyler WICK in Case Number 91–1412.

Nos. 91–1058, 93–44 and 92–1385.

United States Court of Veterans Appeals.

April 8, 1993.

As Amended May 4, 1993.

William G. Smith, pro se.

Hugh D. Cox, pro se.

Bruce Tyler Wick, pro se.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, David W. Engel, Sp. Asst. to the Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michele Russell Katina, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge; and FARLEY and MANKIN, Associate Judges.

FARLEY, Associate Judge:

On February 3, 1993, William G. Smith, Esq., pursuant to Rule 2 of this Court's Rules of Practice and Procedure, moved for an Order consolidating the above-referenced matters in the interest of judicial economy. The motion was supported by attorneys Cox and Wick, as well as the Department of Veterans Affairs (formerly Veterans' Administration) (VA) General Counsel. Although the form of the submissions filed and the relief sought differ slightly, in each matter the Court is asked to order the enforcement of a fee agreement by directing the Secretary of Veterans Affairs (Secretary) to pay the attorney fees specified in the agreement. By Order dated February 23, 1993, this Court granted attorney Smith's motion, consolidated the three matters, and referred them to this panel. On March 31, 1993, attorney Wick filed a motion for a second extension of time, until April 28, 1993, to file a reply to the Secretary's response to his petition for a writ of mandamus. The motion was improvidently stamp-granted on April 5, 1993, and the grant is hereby vacated.

These consolidated matters are now ripe for our review. Following the pattern of *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), and *Russell v. Principi*, 3 Vet.App. 310 (1992), we will first outline statutory and regulatory provisions on fees and fee agreements, then deduce principles of general application, and, finally, apply the principles to each of the three matters before us.

Because the fee agreement entered into between attorney Smith and his client does not satisfy the requirements of 38 U.S.C.A. § 5904(d) (West 1991), we hold that the Secretary was required neither to withhold Smith's attorney fees from his client's past-due benefits nor to pay such fees directly to Smith, and that in the absence of such a legal duty there is no basis for the award of sanctions against the Secretary. Further, we hold that, because attorney Cox did not represent an appellant before this Court and the agreement was not reviewed by the BVA, we lack jurisdiction to review the fee agreement in question, and we deny attorney Cox' petition for a writ of mandamus. Finally, because the fee agreement entered into between attorney Wick and his client satisfies each of the requirements of 38 U.S.C.A. § 5904(d), we hold that attorney Wick was entitled to be paid directly by the Secretary his agreed-upon attorney fees, and direct the Secretary to pay to attorney Wick the sum to which he is entitled by law.

## I.

Prior to the enactment of the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), an attorney or agent was proscribed from charging a claimant more than $10 for representation before the VA or the Board of Veterans' Appeals (Board or BVA) on a veteran benefits claim. *See* Act of July 14, 1862, §§ 6, 7, 12 Stat. 566, 568 (imposing $5 fee limitation); Act of July 4, 1864, §§ 12, 13, 13 Stat. 387, 389 (raising $5 fee limitation to $10, the prevailing limit until implementation of the VJRA in 1988); *see also* 38 U.S.C.A. § 3404(c) (West 1982). The objective of the fee limitation was to maintain the informality of the VA's claims adjudication process. *See Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 323–27, 105 S.Ct. 3180, 3190–92, 87 L.Ed.2d 220 (1985). Recognizing that claimants seeking judicial review of the denials of claims for veterans benefits needed qualified representation at reasonable costs (*see Matter of Smith*, 1 Vet. App. 492, 502 (1991) (Steinberg, J. concurring)), Congress repealed the $10 fee limitation; revised subsection (c) of 38 U.S.C.A. § 5904 (formerly § 3404); and added a new subsection (d) which permitted claimants to enter into fee agreements with attorneys and agents to represent them in benefits proceedings before the VA, BVA, and this Court, under certain specified circumstances. *See* VJRA, Pub.L. No. 100–687, § 104(a), §§ 401, 403, 102 Stat. at 4108, 4122. (The use of the term "attorney," hereinafter, will refer to either an attorney or an authorized agent.)

A fee agreement may be entered into between a claimant and an attorney for services provided only after the BVA makes a final decision on the issue or issues involved in the case; therefore, while an attorney is not precluded from performing services prior to the issuance of a first final BVA decision, the attorney is precluded from charging a fee for such services. 38 U.S.C.A. § 5904(c)(1) (West 1991); 38 C.F.R. § 20.609(c)(1) (1992). The attorney must have been retained with respect to such case within one year following the date on which the BVA made its final decision on the issue or issues involved in the case. 38 U.S.C.A. § 5904(c)(1); 38 C.F.R. § 20.609(c)(3) (1992). An attorney who represents a claimant before the VA or the BVA after the BVA makes a final decision in the case is required to file a copy of any fee agreement with the BVA. 38 U.S.C.A. § 5904(c)(2) (West 1991); 38 C.F.R. § 20.609(g) (1992).

The BVA, "upon its own motion or the request of either party," may review the fee agreement and "may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable." 38 U.S.C.A. § 5904(c)(2);

38 C.F.R. § 20.609(i) (1992). The findings and order by the Board upon such a review are subject to further review by this Court (*id.*), which "may affirm the finding or order of the Board and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable." 38 U.S.C.A. § 7263(d) (West 1991). It necessarily follows that in order for this Court to be able to review a finding or order of the Board, the Board must have first reviewed the fee agreement; this Court may not review such a fee agreement in the first instance. *See Matter of Smith*, 1 Vet.App. at 496. Moreover, a Notice of Appeal (NOA) "under § 7266(a) by a party aggrieved by a BVA finding or order is the appropriate and indispensable procedure to obtain review here of a BVA decision on a fee agreement." *Id.* Rule 3(c) of this Court's Rules of Practice and Procedure provides that such an NOA must include, inter alia, the name of the party or parties designating the appeal and must designate the Board decision being appealed.

 With respect to representation of a claimant before this Court, a copy of any fee agreement must be filed with the Court concurrent with the filing of the NOA. 38 U.S.C.A. § 7263(c) (West 1991). The Court may, "on its own motion or the motion of any party," review the fee agreement (*id.*) and may "order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable." 38 U.S.C.A. § 7263(d). An order of this Court resulting from a review of a BVA review of a fee agreement or the review of a fee agreement filed in connection with an appeal to this Court "is final and may not be reviewed in any other court." *Id.*

The VJRA enacted neither a formula for nor a limit upon the amount of an attorney fee. However, it charged both the BVA and this Court to order reductions in fees found to be "excessive or unreasonable." *See* 38 U.S.C.A. §§ 5904(c)(2); 7263(d). The absence of specific Congressional guidance with respect to what is a "reasonable" fee was not an accident. Indeed, as was stated by Senator Alan Cranston, the Chairman of the Senate Committee on Veterans' Affairs as well as the Senate author and floor manager of the VJRA, during Senate consideration of the compromise agreement on the legislation (S. 11) enacted as Public Law 100–687: "[A]long with granting veterans the right to obtain judicial review we should grant them as much latitude as possible to make determinations about their representation." 134 Cong. Rec. S16647 (daily ed. Oct. 18, 1988). To that end, Congress considered and rejected a cap on attorney fees to afford the veteran the freedom to contract for the best possible representation for VA benefit claims. 134 Cong.Rec. S16637 (daily ed. Oct. 18, 1988) (statement of Sen. Mitchell); 134 Cong.Rec. S16636 (daily ed. Oct. 18, 1988) (statement of Sen. Simpson); 134 Cong.Rec. S16651 (daily ed. Oct. 18, 1988) and H10345 (daily ed. Oct. 19, 1988) (Explanatory Statement). A more precise definition of a not "excessive or unreasonable" fee will have to await further case-by-case development in the context of specific situations.

The Secretary has promulgated 38 C.F.R. § 20.609 (1992), a regulation which, although not binding on this Court, does govern the payment of representatives' fees in proceedings before VA field personnel and before the BVA. This regulation provides that a fee agreement may call for "a fixed fee, an hourly rate, a percentage of benefits recovered or a combination of such bases." 38 C.F.R. § 20.609(e) (1992). In addition, the Secretary has listed a number of factors which may be considered by the BVA in determining whether a fee is reasonable:

(1) The extent and type of services the representative performed;

(2) The complexity of the case;

(3) The level of skill and competence required of the representative in giving the services;

(4) The amount of time the representative spent on the case;

(5) The results the representative achieved, including the amount of any benefits recovered;

(6) The level of review to which the claim was taken and the level of the review at which the representative was retained;

(7) Rates charged by other representatives for similar services; and

(8) Whether, and to what extent, the payment of fees is contingent upon the results achieved.

*Id.*

Congress carefully defined one set of circumstances in which a representative would be entitled to payment "by the Secretary *directly.*" 38 U.S.C.A. § 5904(d)(2) (West 1991) (emphasis added). Those circumstances are:

**IF:**

● the claimant and the representative have entered into a fee agreement (38 U.S.C.A. § 5904(d)(1) (West 1991)); **and**

● the fee agreement provides for payment of a fee to the representative directly by the Secretary (38 U.S.C.A. § 5904(d)(2)(A)(i) (West 1991)); **and**

● the payment of the fee is "contingent upon whether or not the claim is resolved in a manner favorably to the claimant" (38 U.S.C.A. § 5904(d)(2)(A)(ii) (West 1991)); **and**

● the amount of the fee "does not exceed 20 percent" of the past-due benefits awarded (38 U.S.C.A. § 5904(d)(1)); **and**

● all or part of the relief sought is granted (38 U.S.C.A. § 5904(d)(2)(B) (West 1991));

**THEN:**

● to the extent that past-due benefits are awarded, the Secretary "may direct that payment of any attorneys' fee under [the] fee agreement be made out of such past-due benefits" (38 U.S.C.A. § 5904(d)(3) (West 1991)); **but**

● the Secretary may not pay attorney fees out of future benefits (*Id.*).

Although Congress left the definition of a not "excessive or unreasonable" fee to future development, in view of the specificity of 38 U.S.C.A. § 5904(d), the Court here and in the future will presume that a fee called for in a § 5904(d) fee agreement is neither "excessive nor unreasonable." *See* 38 C.F.R. § 20.609(f) (1992); *see also Aron-*

*son v. Derwinski*, 3 Vet.App. 162, 164 (1992). In that regard, we note that the Secretary has promulgated a corresponding regulation which provides that a "claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by the [VA] out of any past-due benefits awarded as a result of a successful appeal to the [BVA] or an appellate court...." 38 C.F.R. § 20.609(h)(1) (1992). The regulation sets forth three conditions which must be met for such direct payment by the VA to the attorney:

(i) The total fee payable (excluding expenses) does not exceed 20 percent of the total amount of the past-due benefits awarded,

(ii) The amount of the fee is contingent on whether or not the claim is resolved in a manner favorable to the claimant or appellant, and

(iii) The award of past-due benefits results in a cash payment to a claimant or an appellant from which the fee may be deducted.

38 C.F.R. § 20.609(h)(1)(i), (ii), and (iii) (West 1991). If these conditions are satisfied, the "[fee] agreement will be honored by the Department...." 38 C.F.R. § 20.-609(h)(1).

## II.

■ The Secretary argues that this Court lacks the authority to enforce fee agreements entered into pursuant to 38 U.S.C.A. § 5904(d) and to compel payment by the Secretary to the attorney. We disagree.

The VJRA specifically vested this Court with the jurisdiction and the authority to review fee agreements filed with the Court and to review BVA findings and orders issued in connection with its review of fee agreements. *See* 38 U.S.C.A. §§ 5904(d); 7263(c). The relevant provisions of the VJRA are now codified in chapter 72 of title 38, United States Code. In defining the scope of this Court's review authority, Congress included the following:

In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall—

. . . . .

(2) compel action of the Secretary unlawfully withheld or unreasonably delayed;

38 U.S.C.A. § 7261(a) (West 1991). Therefore, should the Court determine in a matter over which it has jurisdiction that the Secretary has refrained from performing an act required by law, the Court not only may but "shall" compel the performance of that action.

In *Bowen v. Galbreath*, 485 U.S. 74, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988), the government similarly challenged the authority of a district court to direct that attorney fees be withheld from past-due benefits in cases under Title XVI of the Social Security Act (dealing with Federal Old–Age, Survivors, and Disability Insurance Benefits), as codified at 42 U.S.C.A. § 1381–1383c. The Supreme Court held that the district court had exceeded its authority, but only because there was no express statutory provision in Title XVI for the withholding of funds and the payment of attorney fees. Justice Brennan, writing for a unanimous Court, distinguished Title XVI from Title II (which deals with Supplemental Security Income benefits), the latter having been amended to permit a district court to award attorney fees out of past-due benefits, and stated that "the District Court's order would clearly be valid if this were a Title II case," i.e., where the statute permitted the withholding. 485 U.S. at 76, 108 S.Ct. at 894. The *Bowen* opinion specifically cited, and noted that Congress had "effectively codified," the holding of the Fifth Circuit in *Celebrezze v. Sparks*, 342 F.2d 286, 288–89 (5th Cir.1965): "[W]here a statute gives a court jurisdiction, it must be presumed, absent any indication to the contrary, that the court was intended to exercise all the powers of a court, including the power to provide for payment of attorney fees out of any recovery." *Id.*

Following the guidance of *Bowen* and *Celebrezze*, we hold that, in a matter over which this Court has jurisdiction under 38 U.S.C.A. §§ 5904(c)(2) or 7263(c), pursuant to 38 U.S.C.A. § 7261(a) this Court has the authority and the responsibility to compel enforcement of a § 5904(d) fee agreement where the Secretary was under a statutory duty to comply with the terms of the agreement.

### III.

We turn next to the question of whether the Secretary's compliance with a § 5904(d) fee agreement is obligatory or discretionary. The resolution of this issue necessarily turns upon the applicable statutory provisions and, as in all questions involving statutory interpretation, we start with an examination of the language of the statute itself. "If the statutory language is plain, and its meaning clear, no room exists for statutory construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet. App. 584, 587–88 (1991). However, "[d]etermining a statute's plain meaning requires examining [not only] the specific language at issue [but also] the overall structure of the statute." *Id.* at 586. Therefore, "each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (4th ed. 1984).

The pertinent subsections of the relevant statute provide as follows:

(2)(A) A fee agreement ... is one under which (i) the amount of the fee payable to the attorney *is to be paid to the attorney by the Secretary directly* from any past-due benefits awarded on the basis of the claim, ...

. . . . .

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Veterans Appeals, *the Secretary may direct* that payment of any attorney's fee under a fee arrangement described in paragraph (1) of this subsection be made out of such past-due benefits. *In no*

*event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision* of the Secretary, the Board of Veterans' Appeals, or Court of Veterans Appeals making (or ordering the making of) the award.

38 U.S.C.A. § 5904(d) (emphasis added).

■ The provision of § 5904(d)(3) that the Secretary *"may direct"* payment must be read in light of the *"is to be paid* to the attorney by the Secretary" language of § 5904(d)(2)(A). There can be no question that Congress, in enacting § 5904(d), contemplated an obligatory rather than a discretionary direct payment by the Secretary to a claimant's attorney. Senator Cranston, in describing the compromise agreement which became the VJRA, stated that in order

[t]o assist claimants, whose resources may be limited but who have good cases, to acquire legal assistance, the compromise agreement would provide that a claimant and an attorney may enter into a contingency agreement pursuant to which *the [Secretary] will pay the attorney's fees directly* out of past-due, but never future, benefits awarded to the claimant. This would be an exception to section [5301] of title 38 which prohibits a veteran from assigning the rights to his or her benefits.

134 Cong.Rec. at S16646 (daily ed. Oct. 18, 1988) (statement of Senator Cranston) (emphasis added).

Rather than vesting the Secretary with discretion to withhold a portion of past-due benefits for payment of the attorney fees, the "may direct" language of § 5904(d)(3) was specifically intended, as Senator Cranston indicated, to permit the Secretary to honor a client's assignment of a portion of any past-due benefits recovered for the purpose of paying the attorney fees, despite the statutory prohibition of the assignment of veterans benefit payments. *See* 38 U.S.C.A. § 5301(a) (West 1991) ("[p]ayments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to

the extent specifically authorized by law ..."). Therefore, the word "may" must be read as permissive rather than discretionary for such permission was necessary in view of the prohibition of § 5301(a).

In *Aronson, supra,* the Court held that the Secretary is under an obligation to honor a § 5904(d) fee agreement. In that case, the Secretary expressed concern that there might be a conflict between § 5301(a) and the attorney-fee provisions of 38 U.S.C.A. §§ 5904 and 7263. The Court noted:

As to any conflict between the non-assignability of benefits provision of 38 U.S.C. § 5301 and the attorney fee provisions of Chapters 59 and 72 of title 38, basic rules of statutory construction dictate that we must construe those provisions in such a way as to avoid or eliminate such conflict. *Sutherland Statutory Construction* § 53.01, at 549 (4th ed. 1984); *Anderson v. Federal Deposit Ins. Corp.,* 918 F.2d 1139 (4th Cir.1990). In this case, we need only look to the provisions of 38 U.S.C. § 5904(d)(3) for general guidance as to treatment of attorney fees and past due benefits and to 38 U.S.C. § 7263 for our authority to review fee agreements....

*Aronson,* 3 Vet.App. at 163. The Court held that § 5301 "does not constitute a limitation on the Secretary's obligation with regard to payment of attorney fees from appellant's past due benefits." *Id.* at 164. In addition, the Court concluded that, in adopting 38 C.F.R. § 20.609(h)(1)(i), (ii), and (iii), the "Secretary has acknowledged his obligation with regard to payment of attorney fees from past due benefits and, by doing so, has eliminated the discretionary element and the need to rely on 'common law contract principles to honor the assignment.'" *Id.* (quoting *Matter of Smith,* 1 Vet.App. at 505 (Steinberg, J., concurring)).

When viewing the statute as a "harmonious whole," and consistent with *Aronson,* we hold that the Secretary is under a legal duty to comply with a § 5904(d) fee agreement and that he has no discretion to refuse to comply.

## IV.

Invoking the specter of sovereign immunity with a defense of impossibility, the Secretary argues that payment of an attorney's fee pursuant to a § 5904(d) fee agreement may neither be made by the Secretary nor be ordered by this Court when the only available "fund" for such a payment, the past-due benefits awarded, has been depleted because the Secretary erroneously paid the entire amount to the claimant. It is the Secretary's position that

> ... [a]s no funds remain from the award in question, payment as requested by counsel would necessarily involve some finding of liability by the Court on the part of the Secretary. However, where there has been no waiver of sovereign immunity, as in this case, the Secretary is immune from claims for attorneys fees....

Appellee's Resp. in *Wick*, No. 92–1385, at 4. The Secretary's argument springs from the same root as an Office of the General Counsel (O.G.C.) Precedent Opinion 27–92 (Dec. 9, 1992) which held:

> The United States is immune from claims for attorneys' fees absent a waiver of sovereign immunity. The statute which authorizes the Secretary to pay attorney fees out of past-due benefits does not waive sovereign immunity, and expressly prohibits the withholding of benefits payable after the date of the decision awarding past-due benefits for the purpose of paying attorney's fees. Accordingly, VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant.

*See O.G.C. Prec.Op.* 27–92, at 5. The question before the Court, therefore, is the nature and extent of the Secretary's legal obligation when actions taken, or not taken, by the Secretary have resulted in the depletion of the fund of past-due benefits without honoring a § 5904(d) fee agreement calling for direct payment by the Secretary to the attorney.

■ At the outset, we note that, as demonstrated in Part III, *supra*, 38 U.S.C.A. § 5904(d) imposes a duty upon the Secretary to pay the agreed-upon fee directly to the attorney out of any past-due benefits awarded. A necessary corollary is that § 5904(d) vests in the attorney a corresponding right to receive payment out of the fund of past-due benefits. Where a claimant and an attorney have entered into a § 5904(d) contingency fee agreement, the claimant and the attorney share a joint entitlement to the fund of any past-due benefits awarded with the exact amount of each's entitlement governed by the fee agreement. For example, where a § 5904(d) fee agreement calls for a fee of 20% of any past-due benefits awarded, and such benefits are awarded, the claimant's *entitlement* consists of 80% of the fund and the attorney's *entitlement* consists of 20% of the fund. The statutory right cannot be separated from the statutory duty: just as 38 U.S.C.A. § 5904(d) creates both entitlements, so does it impose a duty upon the Secretary to pay both entitlements. If the VA erred, for whatever reason, and mistakenly paid the entire fund to the claimant, the attorney still would be *entitled* to direct payment by the Secretary of the agreed-upon percentage of the past-due benefits awarded. Section 5904(d) does not establish an order of priorities for entitlements or claimants.

If the Secretary mistakenly paid the entire fund of past-due benefits to a claimant (or, for that matter, to an attorney), the payment of an amount in excess of the entitlement arising from the fee agreement did not vitiate the statutory right of the attorney (or the claimant) to payment of the entitlement called for in the agreement, and the Secretary remains under a duty to fulfill his statutory obligation to pay. By statute, the fee agreement serves to divide and define the fund of past-due benefits; any overpayment cannot be considered to have been made from the fund as so defined. The Secretary, of course, may seek to recoup the amount of the overpayment from the one to whom it was mistakenly paid, and the recipient is free to seek a waiver of the collection of the overpayment if such collection would be against equity and good conscience. 38 U.S.C.A. § 5302 (West 1991); 38 C.F.R. §§ 1.962, 1.963

(1992). Nevertheless, and regardless of the success of any recoupment efforts, the attorney remains statutorily entitled to payment of the agreed-upon fee "by the Secretary directly." 38 U.S.C.A. § 5904(d).

The language of the second sentence of § 5904(d)(3) ("In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Veterans Appeals making (or ordering the making of) the award") restricts the Secretary from making such payments out of future benefits; this is consistent with the legislative history behind the VJRA. One of the purposes of the VJRA was to

> allow an attorney to charge reasonable fees for representing VA claimants before the VA or the new court following the initial BVA decision—with any such attorney required to file a fee statement with the court and the BVA which could be reviewed upon a charge of unreasonableness in the discretion of the court or the BVA and with no agreement regarding assignment of VA benefits permissible other than one permitting direct payment to the attorney from the VA of contingent fees of up to 20 percent of past-due benefits for representation before the agency or in the courts, or both....

See 134 Cong.Rec. at S16639 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston during Senate consideration of the compromise agreement). However, even when the Secretary has mistakenly paid a claimant more than his or her entitlement under the fee agreement, the payment to the representative would not be made from future benefits due the claimant. Rather, the payment would be made from that portion of the fund of past-due benefits to which the representative is entitled as a matter of law. Thus, the last sentence of § 5904(d)(3) is no bar to the fulfillment of the Secretary's statutory obligation.

It does not appear to matter to the Secretary's "impossibility of performance" argument whether the depletion of the fund was through fault, neglect, or, as the Secretary suggests in one of the matters before the Court, mere "inadvertence by VA for the failure...." Appellee's Resp. in *Smith*, No. 91–1058, at 9. Although the Secretary's position is analytically and legally flawed and cannot stand, we cannot help but note the potential for significant mischief if the Secretary's view were to prevail.

The Secretary's argument has all the appeal of the plea of the apocryphal felon who, upon having been found guilty of murdering his parents, sought mercy from the court because he was now an orphan. As the Secretary has indicated, at least one of the three matters now before the Court is the result of the "frustration" encountered by a representative because, in his perception, the Secretary failed in a number of instances to fulfill the statutory duty to honor a fee agreement. *Id.* at 8. Regardless of whether the Secretary's failure to honor a § 5904(d) fee agreement between a claimant and a representative by depleting the fund of past-due benefits was prompted by a pure or devious motive, or no motive at all, it would directly contravene the stated purpose of § 5904(d) which was "to assist claimants ... to acquire legal assistance" by providing for the direct payment to the representative by the Secretary. *See* 134 Cong.Rec. at S16646 (daily ed. Oct. 18, 1988) (Statement of Sen. Cranston during Senate consideration of the compromise agreement).

In *Celebrezze, supra,* the Fifth Circuit discussed at length the policy behind compelling the Secretary of Health, Education, and Welfare (HEW) to withhold a portion of past-due benefits for the payment of attorney fees. The Fifth Circuit's analysis bears upon the situation before this Court:

> For a disabled and probably indigent adult claimant who has been denied benefits by the Secretary is just as much in need of counsel to assist him in prosecuting his appeal to the district court as is the guardian of a minor claimant. And in either case it is quite probable that the fund realized from the court's judgment is the only fund available for the payment of the lawyer whose efforts pro-

duced it for his client. We fully agree with Judge Fisher's statement in his opinion filed in the district court in the present case that surely Congress in providing for judicial review of the Secretary's determinations, "did not intend to deny claimants, often in strained financial circumstances, adequate legal representation by depriving the Court of a method by which attorneys could be assured of their fee from the use of this most reasonable, and in most instances, the only source of income available to the claimant."

*Id.* at 289. Nor did Congress intend such a result when it enabled veterans to secure, with the assistance of representatives, judicial review of decisions denying their claims for benefits.

Turning to the intertwined sovereign immunity argument, the purported authorities upon which the Secretary relies are *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 267–268, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); and *Russell v. Sullivan,* 887 F.2d 170 (8th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990). *Alyeska Pipeline,* which rejected an attempt to have attorney fees awarded as costs against the United States under 28 U.S.C.A. § 2412, and *Ruckelshaus,* which denied attorney fees as costs under the Clean Air Act (42 U.S.C.A. § 7607(f)), do stand for the propositions that "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney's fees, ..." and waivers of sovereign immunity are to be strictly construed. *Ruckelshaus,* 463 U.S. at 685, 103 S.Ct. at 3278. Similarly, *Russell* held that

> ... even assuming it had jurisdiction in this case, there is no waiver of immunity that allows the Secretary to pay this fee. Since no funds are left for payment to [the claimant], ordering the Secretary to pay [the attorney's] award would require payment out of general social security funds. The United States is not liable for such a payment absent specific waiver of sovereign immunity. *See Ruckel-*

*shaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). Section 406 [of the Social Security Act] contemplates payment of the fee award by the *claimant,* out of past-due benefits, rather than by the government, out of general funds. Thus, 42 U.S.C. § 406 cannot be construed as a waiver of immunity. *See Roberts v. Schweiker,* 655 F.Supp. 1105, 1110 (D.Del.1987) (recovery of fee award available only from claimant's estate since section 406 not a waiver of immunity).

*Russell,* 887 F.2d at 172 (emphasis in original).

■ These cases are, however, wholly inapposite to the VJRA in general and the fee agreement provisions of 38 U.S.C.A. § 5904(d) in particular. The flaw in the Secretary's reasoning is the starting premise: that payment from a fund which the Secretary inappropriately depleted "would necessarily involve some finding of liability by the Court." Appellee's Resp. in *Wick,* No. 92–1385, at 4. To the contrary, the Secretary's duty to honor a § 5904(d) fee agreement arises not from a finding of liability by this Court, which would require a waiver of sovereign immunity (*see Jones v. Derwinski,* 2 Vet.App. 231 (1992) (en banc)), but from an Act of Congress. Simply stated, the controlling issue is not one of sovereign immunity but of enforcement of an obligation created by statute.

A similar sovereign immunity argument was rejected in *Celebrezze; supra,* which involved an analogous fact pattern. The district court reversed the denial of benefits and directed a finding in favor of the plaintiff. On a motion by the plaintiff's attorney, the court ordered that 20% of the amount of benefits which would be due to the plaintiff up to December 22, 1963, be allowed as attorney fees and that the Secretary of HEW make all the payments up to December 22, 1963, payable *jointly* to the plaintiff and his attorney. The sole assignment of error on appeal was the order that all payments be made payable *jointly* to the plaintiff and his attorney. The Secretary of HEW argued, inter alia, that direct payment to the attorney would

violate the principles of sovereign immunity. However, the Court of Appeals noted:

> We think that section 205(g) [now 405(g)] of the Act confers upon the district court full judicial power to deal with the litigation brought to it under that section, including the power, in appropriate cases, to provide for the payment from the past due benefits recovered by the claimant in the litigation of counsel fees for conducting it.

342 F.2d at 289.

Following the lead of Justice Brennan in *Bowen, supra,* and the reasoning of the Fifth Circuit in *Celebrezze v. Sparks, supra,* we hold that the Secretary has a statutory duty to pay to an attorney the fees called for in a § 5904(d) fee agreement, and where the Secretary has failed to do so, the Court may order enforcement of the fee agreement and fulfillment of the statutory duty without encountering or offending principles of sovereign immunity.

## V.

We turn now to the specifics of the three matters before us.

### A. IN THE MATTER OF THE FEE AGREEMENT OF WILLIAM G. SMITH IN CASE No. 91–488; No. 91–1058.

This matter is before the Court on a motion for sanctions for failure to withhold and pay attorney fees under 38 U.S.C.A. § 5904(d)(2)(A). The predicate appeal is *Seethaler v. Derwinski,* 2 Vet.App. 340. By Order dated March 16, 1992, the Court, retaining jurisdiction, granted the Secretary's motion to remand. On October 26, 1992, the Regional Office (RO) issued a rating decision granting the claimant entitlement to a total disability rating due to individual unemployability with an effective date of October 30, 1989. The motion for sanctions for failure to withhold attorney fees from the fund of past-due benefits was filed on December 28, 1992. On January 28, 1993, the Secretary filed a response to the motion for sanctions. On February 3, 1993, the unopposed motion to consolidate was filed. (There is also pending before the Court a motion for fees under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412, which is not yet ripe for disposition and will not be addressed here.)

In his motion, attorney Smith recites that, notwithstanding his having filed with the RO, the BVA, and this Court, a copy of his fee agreement with his client, the Secretary paid the entire amount of the past-due benefits, $39,187.00, to his client. He also declares that his client reimbursed him in the amount of $7,837.40. *See* Declaration of William G. Smith, at 6; *see also* Exhibit H to the motion for sanctions. The motion seeks alternative sanctions, including reimbursement for the time and expense incurred in preparing and filing the motion, payment to counsel by the Secretary of the fee called for in the fee agreement, the imposition of a fine upon the Secretary, or a judgment of contempt. While not disputing these facts, the Secretary does note that the amount paid to attorney Smith appears to have been calculated based upon an amount which included one month of current benefits and, for that reason, exceeds 20% of past-due benefits by $250.62. (If the Secretary's calculations are accurate, it would appear that the client may not have realized that the check he received included a small amount for current benefits; if so, the Court is confident that Mr. Smith, a distinguished member of our bar, will have clarified any misunderstanding.)

Necessarily included in the motion for sanctions for the Secretary's failure to comply with the fee agreement entered into by counsel and his client is a request to review the fee agreement and to declare it not to be "excessive or unreasonable." Since a copy of the agreement was filed with the Court and counsel represented his client before the Court, the conditions precedent have been satisfied and this Court has jurisdiction under 38 U.S.C.A. § 7263(c) to review the fee agreement and entertain the motion. The fee agreement entered into between attorney Smith and his client appears as Exhibit B to the motion for sanctions. Paragraphs 3 and 4 of that agreement provide as follows:

> 3. FIXED FEE. Client agrees to pay a fixed fee of $1,000.00 for Attorney's ser-

vices under this Contract. The fixed fee is due and payable as follows: paid in advance on Feb. 12, 1991. Attorney shall have no obligation whatsoever to provide services to Client until the fixed fee, if any, is paid in full or paid in the installments, if any, required by the terms of this Contract. Unless the fee retained would be unconscionable and except as provided herein, the fixed fee will be earned in full and no portion of it will be refunded once any substantial services have been performed.

4. CONTINGENT FEE (DEPARTMENT OF VETERANS AFFAIRS AND COURT OF VETERANS APPEALS CASES). In addition to the fixed fee, if any, required by the terms of paragraph 3 of this Contract, Client agrees to pay a "Contingent Fee" equal to 20% (Twenty Percent) of the total amount of any past-due benefits awarded on the basis of the Client's claim with the Department of Veterans Affairs (hereinafter, D.V.A.). It is understood that this Contingent Fee is to be paid by the D.V.A. directly to the attorney from any past due benefits awarded to the Client. However, Client remains liable for the amount of the Contingent Fee of 20% of any past-due benefits awarded on the basis of the Client's claim until and unless the fee is paid to the Attorney by the D.V.A., and the Client agrees to pay said Contingent Fee directly to Attorney in the event the D.V.A. fails to do so.

Motion for Sanctions, Exhibit B, at 1–2.

▮ The client and the counsel have agreed upon a fee which consists of the sum of $1,000.00 plus 20% of the total amount of any past-due benefits awarded. Upon our review of the fee agreement, we hold that the fee is not "excessive or unreasonable." 38 U.S.C.A. § 7263(d). We are also compelled to hold, however, that the Secretary was not under a duty to pay counsel directly from the fund of past-due benefits. The Secretary is required to withhold attorney fees from past-due benefits and pay the fees directly to an attorney *only* when the fee agreement falls within the four corners of § 5904(d). The fee agreement entered into between counsel

and client was not a § 5904(d) fee agreement because the agreed-upon fee exceeded the 20% limit of 38 U.S.C.A. § 5904(d)(1) by the amount of the additional fixed fee of $1,000.00. Therefore the Secretary was under no obligation with respect to the fee agreement. In the absence of a legal duty, there is no basis for sanction.

▮ Even if this agreement were a § 5904(d) fee agreement, the motion would have to be denied because, under the circumstances, the Court cannot enforce the agreement. Counsel has declared, as indeed he must as an officer of the Court, that the client paid the agreed-upon fee in full. *See* Motion for Sanctions and Declaration of William G. Smith; Exhibit H. Where there is a § 5904(d) fee agreement and the attorney is paid in full by the client, notwithstanding the failure of the Secretary to fulfill his statutory duty to honor the agreement by withholding and paying the attorney's agreed-upon share of the past-due benefits directly to the attorney, the Court holds that there has been compliance with the letter and the spirit of § 5904(d). *Cf. Ashley v. Derwinski*, 2 Vet. App. 62, 67 (1992) (Secretary's breach of statutory duty to mail BVA decision to claimant's representative cured by actual receipt); *Matter of Receipt of Fee by Smith*, 3 Vet.App. 77 (1992) (Order by Court en banc denying motion for sanctions and for other relief due to absence of cognizable injury where attorney-petitioner had been paid by client.) The intent of Congress was to facilitate the representation of claimants by, in turn, facilitating the payment of attorney fees; permitting a double recovery by enforcing a fee agreement where the attorney has been paid would stand the statute, and the intent of Congress, on its head.

**B. IN THE MATTER OF THE FEE AGREEMENT OF HUGH D. COX; NO. 93–44.**

This matter arises out of a petition for extraordinary relief and is supported by the declarations of attorney Hugh D. Cox, Esq., and his client, Samuel Mosley. The following summary of events may be gleaned from a review of the petition and

500

the supporting documents. On December 19, 1990, the BVA issued a decision denying Mr. Mosley's claim. On December 10, 1991, attorney Cox was retained by Mr. Mosley and, on that date, they entered into a fee agreement which called for a fee of "one-fifth (⅕) of past due benefits (or overpayments waived) as of the date of the award decision...." *See* Petition, Exhibit A. In a letter dated December 31, 1991, attorney Cox advised the RO of his intent to seek to reopen Mr. Mosley's claim and to seek unemployability; the letter indicates that a copy of the fee agreement was enclosed. *See* Petition, Exhibit B. There is no indication that a copy of the fee agreement was filed with the Board; however, the statute which required such a filing, 38 U.S.C.A. § 5904(c)(2), provides only that the filing shall be made "at such time as may be specified by the Board." The regulation which specifies the time and manner for filing a fee agreement ("within 30 days of its execution by mailing the copy" to the Board) was not promulgated until August 25, 1992. 38 C.F.R. § 20.609(g); *see also* 38 C.F.R. § 20.609(h)(4) (1992) (requires notice and filing of a § 5904(d) agreement with the RO within 30 days of the execution of the agreement, which attorney Cox did by the letter of December 31, 1991.)

Following a hearing on March 19, 1992, with no further notice to counsel other than a letter of June 9, 1992, acknowledging counsel's request for records (Petition, Exhibit D), counsel's client received a check for past-due benefits in the amount of $37,408.00. In response to an inquiry, counsel was advised by letter dated December 4, 1992, as follows:

> We have reviewed this case and find that you are entitled to a fee of ⅕ of past due benefits.... [Mr. Mosley's] past due benefits were $37,408.00. You are entitled to a fee of $7,481.60.
>
> Since this case was not referred to the Board of Veterans Appeals the award procedure did not include consideration for payment of attorney fees. Payment was made to the claimant and the VA will be unable to pay your fee from past due benefits as these benefits have already been disbursed. We regret the

error but any adjustment of the fee must be arranged between you and Mr. Mosley.

Petition, Exhibit G.

The sum of $1,200.00 was paid to attorney Cox by his client on January 7, 1993. *See* Petition, Exhibit H. In addition, on February 16, 1993, attorney Cox filed a notice of additional payment in the amount of an additional $1,200.00 for a total payment by his client to date of $2,400.00.

■ Attorney Cox did not "represent[ ] an appellant before the Court"; therefore, we lack jurisdiction to review the fee agreement under 38 U.S.C.A. § 7263(c). Since the Board has not, to date, "upon its own motion or the request of either party," reviewed the fee agreement, there is neither a finding nor an order of the Board for this Court to review. Therefore, we also lack jurisdiction under 38 U.S.C.A. § 5904(c)(2).

■ In filing a petition for an extraordinary writ, petitioner seeks to invoke our jurisdiction under the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1966). *See* 38 U.S.C.A. § 7265(b) (West 1991); *Erspamer v. Derwinski*, 1 Vet.App. 3 (1990). However, as we noted in *Erspamer*, a petitioner seeking an extraordinary writ, such as a writ of mandamus, must demonstrate both a clear and indisputable entitlement to the writ and the lack of an adequate alternative means to obtain the requested relief. *Erspamer*, 1 Vet.App. at 9. A writ of mandamus is a drastic remedy, one to be invoked only in extraordinary circumstances. *In re Quigley*, 1 Vet.App. 1 (1990). In light of the provisions of 38 C.F.R. § 20.609(i), which permit a party to a fee agreement to petition the Board for review of the agreement, the Court finds that petitioner has not demonstrated a compelling basis for the issuance of a writ of mandamus because of the availability of a potentially adequate alternative remedy. Accordingly, the Court declines the invitation to exercise jurisdiction under the All Writs Act, and the petition for extraordinary writ is denied.

**C. IN THE MATTER OF THE FEE AGREEMENT OF BRUCE TYLER WICK IN CASE No. 91–1412; No. 92–1385.**

This matter is before the Court on the motion of Bruce Tyler Wick, Esq., to compel payment of attorney fees. On August 16, 1991, attorney Wick filed a Notice of Appeal (NOA) in *Reichbaum v. Derwinski*, 2 Vet.App. 340; a copy of the fee agreement was filed with the NOA. By Order dated March 27, 1992, this Court vacated and remanded the BVA decision. On remand, the BVA awarded the claimant a 100% rating for post-traumatic stress disorder (PTSD). Attached to the motion to compel was a copy of a letter from attorney Wick to the Adjudication Officer at the Cleveland, Ohio, RO, in which attorney Wick indicated that he had spoken by phone the previous day with an attorney "in the office of the Counsel to the BVA Chairman about getting paid. He advised me to make sure that a copy of my fee agreement with Mr. Reichbaum was on file with the [RO]." The letter purported to enclose the agreement and requested that it be placed in the claimant's file "to ensure prompt payment." Letter dated August 18, 1992, attached to motion to compel. Notwithstanding these precautions, the fee agreement was not honored and the total amount of past-due benefits, $37,433.00, was paid directly to the claimant. In a letter dated October 27, 1992, from the Adjudication Officer, attorney Wick was advised:

> We regret that we failed to withhold any attorney fees from the $37,433 retroactive benefits Mr. Reichbaum was entitled to receive for the period April 1, 1989, to August 31, 1992. In error, we issued him the full payment for this period. We should have withheld the attorney fees from the retroactive benefits and issued the payments withheld directly to you. Since we failed to withhold the attorney fees, Mr. Reichbaum is responsible for paying your fees for services rendered. We regret any inconvenience caused by our error.

Letter of October 27, 1992, attached to motion to compel. Also attached was a similar letter by the Adjudication Officer advising Mr. Reichbaum that he was responsible for paying his attorney. On November 16, 1992, attorney Wick filed the motion to compel payment in which he recites that "Mr. Reichbaum advises that he has spent the $37,433.00, principally on the payment of accumulated bills and home improvements." On January 12, 1993, the Acting Secretary filed a response to the motion which did not take issue with any of the factual representations of attorney Wick.

■ Since attorney Wick represented "an appellant before this Court" and filed a copy of the fee agreement with the Court, we have jurisdiction under 38 U.S.C.A. § 7263(c) to review the fee agreement and consider the motion to compel payment. In pertinent part, the fee agreement provides:

3. FIXED FEE.

Client agrees to pay a Fixed Fee of $800 for Attorney's services under this Contract. The Attorney shall have no obligation whatever to provide services to Client until the first installment of $200 of this Fixed Fee is paid and a signed copy of this contract is returned to Attorney.

Three additional monthly payments of $200 each are due by 1 October 1991; 1 November 1991; and 1 December 1991, respectively. If Fixed Fee is paid on time, as agreed above, Client shall be entitled to a $50.00 refund, which would make the total Fixed Fee $750.

. . . . .

4. CONTINGENT FEE.

In addition to the Fixed Fee called for in Paragraph 3, Client agrees to pay a fee equal to 20 percent of the total amount of any past-due benefits awarded on the basis of the Client's claim with the U.S. Department of Veterans Affairs, *less* the amount of the Fixed Fee paid.

The parties understand and agree that this Contingent Fee is to be paid by the VA directly to the Attorney from any past-due benefits awarded on the basis of the Client's claim; and the client hereby gives his consent to such direct payment by the VA to Attorney.

**502**

However, Client remains liable for the amount of the Contingent Fee of 20 percent of any past-due benefits awarded on the basis of the Client's claim; unless and until the fee is paid to the Attorney by the VA. The Client agrees to pay said Contingent Fee (less the Fixed Fee paid) directly to the Attorney, in the event the VA fails to do so.

*See* Attorney–Client Fee Contract: U.S. Court of Veterans Appeals, attached to the motion to compel (underscoring in original).

In view of the amount of past-due benefits awarded, the fee agreement here fits squarely within the four corners of 38 U.S.C.A. § 5904(d). In addition to meeting all of the other statutory criteria, the agreement calls for a fee which does "not exceed 20 percent of the total amount of any past-due benefits." 38 U.S.C.A. § 5904(d)(1). Although there is an initial fixed fee of $800, the agreement further specifies that the contingency fee shall be "equal to 20 percent of the total amount of any past-due benefits ... *less* the amount of the Fixed Fee paid" (underscoring in original). Whereas the fee agreement in *Matter of Smith,* Part V., A., *supra,* called for a fee of 20% *plus* a fixed fee, the agreement here specifies a fee of 20% *minus* the fixed fee paid. The net fee to be paid, therefore, is 20%, which, by definition, does not "exceed 20 percent," the limit imposed by § 5904(d)(1).

We hold, therefore, that the fee agreement in this matter is a § 5904(d) fee agreement and attorney Wick is entitled to be paid directly by the Secretary his agreed-upon attorney fees in the amount of 20% of the fund of past-due benefits, $37,-433.00, less the fixed fee paid of $800, for a total of $6,686.60. Pursuant to the authority and for the reasons set forth in PARTS I, II, III, and IV, *supra,* the Secretary is directed to honor the § 5904(d) fee agreement and to pay to attorney Wick *directly* the sum of $6,686.60 to which he is entitled as a matter of law.

*It is so Ordered.*