**In the Matter of the Fee Agreement of Hugh D. COX in Case No. 244 70 2756.**

**No. 95–1068.**

United States Court of Veterans Appeals.

Aug. 7, 1997.

As Amended Sept. 4, 1997.

Hugh D. Cox, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael A. Leonard, Washington, DC, were on the pleadings for the respondent.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

STEINBERG, Judge:

This case is before the Court, in the main, on an October 27, 1995, petition by an attorney seeking extraordinary relief in the form of an order that the Board of Veterans' Appeals (BVA or Board) issue a final decision on his claim to entitlement—under 38 U.S.C. § 5904(d) and pursuant to a valid fee agreement—to payment of 20% of past-due benefits that the Department of Veterans Affairs (VA) awarded to his client and that he asserts that the Secretary wrongfully failed to withhold. Alternatively, he seeks an order from the Court that the BVA pay him those fees. Both parties have filed multiple pleadings. The petitioner has also purported to file a Notice of Appeal (NOA) from an August 31, 1995, action by a Deputy Vice Chairman of the Board denying the petitioner's motion that the Board issue a final decision on his claim to have VA pay him those fees. For the reasons that follow, the Court will deny the petition and dismiss the appeal.

## I. Procedural History and Facts

Pursuant to a December 10, 1991, attorney-fee agreement, a veteran retained the petitioner, attorney Hugh D. Cox, to represent him in a claim for VA benefits and promised to pay the petitioner 20% of any past-due benefits that VA awarded. Petition [hereinafter Pet.] at Exhibit (Ex.) A; Answer to Pet. for Extraordinary Relief [hereinafter Ans.] at Ex. 8; *see also In re Fee Agreement of Cox*, No. 95–1068, 1996 WL 207120, at *1 (Vet.App. Apr. 2, 1996) (responding to motion to seal the record and noting that "it appears unlikely that the veteran would need to be identified in any Court action pertaining to the instant matter regarding attorney fees"). The veteran's claim had last been finally denied by the BVA in a December 19, 1990,

decision, pursuant to a July 1989 Notice of Disagreement (NOD). Petitioner's Memorandum in Response to Court Order of January 9, 1997; Ans. at Ex. 4, 5. On December 31, 1991, the petitioner notified a VA regional office (RO) that the veteran wished to reopen his claim. Ans. at Ex. 8. It was at this point that the petitioner entered the case as the veteran's representative. *See In re Fee Agreement of Smith in Case No. 91–488,* 4 Vet.App. 487, 500 (1993) [hereinafter *In re Smith* ], *vacated and remanded in part sub nom. Matter of Wick,* 40 F.3d 367 (Fed.Cir. 1994) [hereinafter *In re Wick* ]. The petitioner included a copy of the fee agreement, signed by both parties, stating, inter alia:

> I ... instruct the VA, VARO, DVA, BVA, COVA [this Court], or other court to set aside one fifth (20 percent) of any such benefits I (or my family) receive after my attorney has been successful in recovering such past due benefits for the purpose of paying attorney's fees. I understand that my contract with my attorney is to pay him the amount of twenty percent of past due benefits which will be set aside by the VA, VARO, BVA, COVA or other courts for such payment.

*Ibid.;* Pet. at Ex. A. On October 20, 1992, the VARO awarded the veteran a 100% rating on his reopened claim (Ans. at Ex. 9); on October 30, 1992, the RO so notified the veteran (Ans. at Ex. 10); and on October 30, 1992, VA made payment of *all* past-due benefits directly to the veteran (Ans. at Ex. 11).

In a November 3, 1992, letter, the petitioner advised the RO that his client had informed him of communications relating to the claim and that the petitioner had received no copies of these communications; he asked the RO to assist in recovering his fee. Pet. at Ex. C; Ans. at Ex. 12. In a December 4, 1992, letter, the RO informed the petitioner of the total award to the veteran ($37,408.00) and the petitioner's resultant 20% fee ($7,481.60); the RO explained:

> We have reviewed this case and find that you are entitled to a fee of 1/5 of past due benefits....
>
> Since this case was not referred to the [BVA] the award procedure did not include consideration for payment of attorney fees.

> Payment was made to the claimant and the VA will be unable to pay your fee from past due benefits as these benefits have already been disbursed. We regret the error but any adjustment of the fee must be arranged between you and [the veteran]. We will inform [him] of our error and the fee that is payable to you.

Pet. at Ex. B; Ans. at Ex. 13.

On January 11, 1993, the petitioner filed in this Court a petition for extraordinary relief seeking a writ of mandamus to compel the Secretary to show cause why he should not immediately pay the fees due the petitioner. Pet. at Ex. D; Ans. at Ex. 15. A February 23, 1993, order of this Court consolidated that petition with two other like petitions, and the Court thereafter held that, because this petitioner "did not represent an appellant before this Court and the agreement was not reviewed by the BVA, we lack jurisdiction ..." over his claim under 38 U.S.C. §§ 5904(c)(2) and 7263(c). *In re Smith,* 4 Vet.App. at 490, 500. The Court also concluded: "In light of the provisions of 38 C.F.R. § 20.609(i), which permit a party to a fee agreement to petition the Board for review of the agreement, the Court finds that [the] petitioner has not demonstrated a compelling basis for the issuance of a writ of mandamus because of the availability of [that] potentially adequate alternative remedy." *In re Smith,* 4 Vet.App. at 500.

The petitioner then filed with the BVA an April 1993 motion seeking payment of attorney fees. Pet. at Ex. F; Ans. at Ex. 17. In a May 7, 1993, letter, counsel to the BVA Chairman responded that the BVA would not act on the motion pending resolution of the appeal in *In re Wick,* which, by then, had been appealed to the U.S. Court of Appeals for the Federal Circuit; the letter further stated: "Your 'motion for payment of attorney's fees' does not meet the requirements of a motion for review of a fee agreement under 38 C.F.R. § 20.609(i)." Pet. at Ex. G; Ans. at Ex. 18. The appeal in *In re Wick* was resolved in November 1994, with the Federal Circuit reversing this Court and holding that the Court had no original jurisdiction to order the Secretary to pay an attorney the equivalent amount to a contingency fee that

the Secretary had wrongfully failed to with-hold from a past-due VA benefits award. *In re Wick,* 40 F.3d at 373. In March 1995, the petitioner renewed his motion to the Board for payment of attorney fees. Ans. at Ex. 19. A May 1995 letter from the BVA Deputy Vice Chairman denied that motion; the Deputy Vice Chairman stated:

I have found no authority that would·allow the Board to issue an order compelling the RO to pay a fee to an attorney when the client/claimant had received all the past-due benefits awarded. Indeed, in a 1992 precedent opinion of the VA General Counsel (O.G.C.Prec.27–92), it was held that because of the prohibition in 38 U.S.C. § 5904[d] against the withholding of benefits payable after the date of the decision awarding past-due benefits for the purpose of paying attorney fees, VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant.

Pet. at Ex. I; Ans. at Ex. 22. In an April 20, 1995, letter, the RO similarly informed the petitioner that, in light of the Federal Circuit's reversal in *In re Wick* and O.G.C. Prec 27–92, it was unable to create an overpayment against the veteran. Pet. at Ex. H; Ans. at Ex. 20.

In a June 23, 1995, motion directed to the BVA, the petitioner, for the stated purpose of providing himself with a basis for an appeal to this Court, requested a final decision from the BVA related to payment or nonpayment of attorney fees in his case. Pet. at Ex. J; Ans. at Ex. 23. The BVA Deputy Vice Chairman denied that motion in an August 31, 1995, letter concluding: "[T]he Board has no authority to order the regional office to pay a fee to an attorney in the circumstances of this case." Pet. at Ex. K; Ans. at Ex. 24.

This case is now before the Court on an October 27, 1995, petition for extraordinary relief and a separate NOA. That petition seeks a Court order compelling a final decision by the BVA on the issue of payment of attorney fees or the payment of those attorney fees to the petitioner by VA; the petition also requests sanctions against VA pursuant to 28 U.S.C. § 2412(b) for its "bad faith" in not notifying him of payment to his client.

An April 1996 order by this Court concluded that sanctions pursuant to 28 U.S.C. § 2412(b) were not available to the petitioner in this Court. *In re Fee Agreement of Cox,* 1996 WL 207120, at *2; the Court there also concluded that, in the absence of a final Board decision, there was no jurisdiction-conferring NOA. *Id.* at *1. The order directed the Secretary to respond to the October 1995 petition; the Secretary's response was filed on June 3, 1996, and the petitioner filed his reply on November 4, 1996. On January 9, 1997, the Court issued an order seeking supplemental briefing on the following questions: (1) Whether the petition had been mooted by payment of fees to the petitioner by the veteran; and (2) whether a jurisdiction-conferring NOD (*see* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988)) existed as to the petitioner's claim. The petitioner filed a response on February 10, 1997, the Secretary filed a reply on March 11, 1997, and the petitioner filed a reply to the Secretary's reply on March 21, 1997.

## II. Analysis

### A. *Introduction*

Section 5904(d)(3) of title 38, U.S.Code, provides:

To the extent that past-due benefits are awarded in any proceeding before the Secretary, the [BVA], or the United States Court of Veterans Appeals, the Secretary may direct that payment of any attorney's fee under a fee arrangement [complying with the other provisions of section 5904] . . . be made out of such past-due benefits.

38 U.S.C. § 5904(d). Section 403 of the VJRA provides:

The amendment to section [5904](c) of title 38, United States Code, made by section 104(a) shall apply only with respect to services of agents and attorneys in cases in which a notice of disagreement is filed with the [VA] on or after the date of the enactment of this division [Division A of the VJRA].

VJRA, § 403, 102 Stat. at 4122 (found at 38 U.S.C. § 5904 note). In essence, VJRA section 403 requires that, at a minimum, there be a VJRA section 402 NOD (that is, one filed on or after the VJRA enactment date,

November 18, 1988) as to the underlying claim in order for the attorney to be entitled to receive reasonable attorney fees from a VA claimant, including an agreement under section 5904(d)(3). *See Matter of Smith in Case No. C 21 317 717,* 6 Vet.App. 25, 26–27 (1993). Additionally, of course, the Court requires a jurisdiction-conferring NOD as to the claim underlying a particular BVA decision before it on appeal in order to review that decision. *See* VJRA § 402; *Grantham v. Brown,* 114 F.3d 1156, 1158–59 (Fed.Cir. 1997); *Hamilton v. Brown,* 4 Vet.App. 528, 535–36 (1993) (en banc), *aff'd,* 39 F.3d 1574, 1583–85 (Fed.Cir.1994); *see also Slater v. Brown,* 9 Vet.App. 240, 244–45 (1996); *Isenbart v. Brown,* 7 Vet.App. 537, 540–41 (1995).

The VA regulation, 38 C.F.R. § 20.609(h) (1996), implementing section 5904(d) requires VA payment of an attorney fee up to 20% of past-due VA benefits awarded, *see In re Smith,* 4 Vet.App. at 494 (quoting *Aronson v. Derwinski,* 3 Vet.App. 162, 163 (1992) (quoting *Matter of Smith in Case No. 90–58,* 1 Vet.App. 492, 505 (1991) (Steinberg, J., concurring) [hereinafter *Matter of Smith in Case No. 90–58* ])), when certain qualifying conditions are met. *See id.* at 493.

■ As an initial matter, it is clear that the petitioner's claim, in premise, satisfies the requirements of 38 U.S.C. § 5904(d) and VJRA § 403 for the direct VA payment of attorney fees from an award of VA back-due benefits: The petitioner was retained by the veteran on December 10, 1991, within one year after a final BVA decision (December 19, 1990); there was an NOD for that decision filed after November 18, 1988; and the agreement does not provide for payment of more than 20% of past-due benefits. *See* 38 U.S.C. § 5904(d); VJRA § 403, 102 Stat. at 4122; 38 C.F.R. § 20.609(c) (1996); *In re Smith,* 4 Vet.App. at 492 (specifying requirements for payment of 20% fee by VA). In its 1992 letter to the petitioner, the RO found that he was "entitled to a fee of 1/5 of past[-]due benefits [$7,481.60]" but stated: "Payment was made to the claimant and the VA will be unable to pay your fee from past due benefits as these benefits have already been disbursed. *We regret the error* but any adjustment of the fee must be arranged

between you and [the veteran]." Pet. at Ex. B; Ans. at Ex. 13 (emphasis added). Hence, VA clearly would have been permitted—indeed, was required—to pay the petitioner from the $37,408 in past-due benefits it awarded the veteran in October 1992. *See id.* at 494 (section 5904(d)(3) was designed "to permit the Secretary to honor a client's assignment of a portion of any past-due benefits recovered for the purpose of paying attorney fees, despite the statutory prohibition [in 38 U.S.C. § 3501(a) ] of the assignment of veterans benefit payments").

There is, then, no dispute about what should have taken place and about the fact that the petitioner was entitled to direct payment by the Secretary of the full $7,481.60. The only reason we are here considering this matter at this late date and at this stage in the proceedings is because of the Secretary's admitted error in not making that payment.

■ Nevertheless, as the Federal Circuit emphasized in *In re Wick,* the Court has jurisdiction to review VA adjudicative actions only under 38 U.S.C. § 7252(a) and pursuant to a final Board decision; neither section 5904 nor any other section of title 38 confers jurisdiction upon the Court to review an attorney-fee agreement absent a final Board decision over which the Court has jurisdiction. *In re Wick,* 40 F.3d at 370–73. The Secretary has notified the Court that no BVA decision exists dated August 31, 1995, as the petitioner contends, and, indeed, the BVA Deputy Vice Chairman's letter of that date to the petitioner specifically declines to issue a decision. Pet. at Ex. K; Ans. at Ex. 24. If the August 1995 letter denying the petitioner's motion for a final Board decision itself constituted a final Board decision, then the Court would have jurisdiction pursuant to section 7252(a) and the appellant's timely NOA filed pursuant to 38 U.S.C. § 7266(a). However, in *Mayer v. Brown,* 37 F.3d 618, 620 (Fed.Cir.1994), the Federal Circuit has also ruled that "[a]n action by the Chairman is not a decision of the [B]oard"; *see also Jordan v. Brown,* 8 Vet.App. 428, 429 (1995); *Cochran v. Brown,* 8 Vet.App. 557, 558 (1996); *cf. Matter of Smith in Case No. 90–58,* 1 Vet.App. at 495–96 (BVA not BVA Chairman authorized to review fee agree-

ments). Thus, the Federal Circuit's determinations in *In re Wick* and *Mayer* are conclusive that absent a final Board decision over which the Court has jurisdiction the Court lacks jurisdiction under section 7252(a) to review a section 5904 fee agreement. Accordingly, in its April 2, 1996, order, the Court concluded that, because there was no BVA decision underlying the petitioner's NOA, the Court lacked authority to entertain a direct appeal of any actual or imputed decision by the BVA on the question of the BVA's authority or obligation to pay the petitioner the attorney fees at issue. The attempted appeal from that BVA action must thus be dismissed.

### B. AWA Authority

Hence, the only matters before the Court are those raised by the petition for extraordinary relief, and that petition implicitly raises the following three questions: (1) Does the Court have the power, pursuant to the All Writs Act (AWA), 28 U.S.C. § 1651(a), to issue an extraordinary writ in this case; (2) can the Court, pursuant to the AWA, order the BVA to issue a final decision on the petitioner's claim in this case; and (3) can the Court, pursuant to the AWA, order VA to pay the petitioner the attorney fees wrongfully not withheld by VA?

▮ The AWA provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As this Court held in one of its first opinions, because this Court is one "established by Act of Congress", *see* 38 U.S.C. § 7251 (establishing this Court "under Article I of the Constitution of the United States [as] a court of record"), it has the jurisdiction to issue extraordinary writs pursuant to the AWA. *Erspamer v. Derwinski*, 1 Vet.App. 3, 6 (1990). Since that first decision, the Court has consistently affirmed that position. *See, e.g., Chandler v. Brown*, 10 Vet.App. 175, 176–77 (1997) (per curiam order); *Steffens v. Brown*, 8 Vet.App. 142, 143 (1995) (per curiam order); *Herrmann v. Brown*, 8 Vet.App. 60, 61–62 (1995); *Bullock v. Brown*, 7 Vet.App.

69, 69 (1994) (per curiam order); *Ebert v. Brown*, 4 Vet.App. 434, 437 (1993), *recons. den.* 5 Vet.App. 276 (1993) (table); *Nagler v. Derwinski*, 1 Vet.App. 297, 302–03 (1991); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).

Indeed, the Court's enabling legislation quite clearly contemplates the Court's issuance of writs. *See* 38 U.S.C. § 7265(a)(3) ("Court shall have power to punish by fine or imprisonment such contempt of its authority as [ ] disobedience or resistance to its lawful writ …"), (b) ("Court shall have such assistance in the carrying out of its lawful writ … as is available to a court of the United States"); 28 U.S.C. § 451 (defining "court of the United States" ·as used in title 28, U.S.Code, as not including Article I courts such as this Court).

Although the Secretary has specifically chosen not to contest the Court's authority to issue a writ of mandamus in this case, *see* Ans. at 5, the Court takes judicial notice of the fact that the Secretary has sometimes, in his pleadings before this Court, argued vigorously that the Court lacks such authority. *See, e.g.,* Respondent's Memorandum of Law in *Ruger v. Brown*, No. 94–681 (memorandum filed Oct. 3, 1994). The Secretary there contended: "While literally the *All Writs Act* applies to 'courts established by Act of Congress,' logically the Act applies solely to those courts which have inherent powers derived from the *Constitution.*" *Id.* at 2–3. The Secretary cites to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 63–76, 102 S.Ct. 2858, 2867–74, 73 L.Ed.2d 598 (1982); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); and *In re United States*, 877 F.2d 1568, 1571 (Fed.Cir.1989), for the purpose of differentiating courts established under Article I of the U.S. Constitution, such as this Court, which courts, he suggests, lack inherent powers, and courts established under Article III, such as the U.S. district courts and courts of appeals. These cases do not support the Secretary's basic conclusion.

*1. Other Court Caselaw.* Neither the Federal Circuit nor the Supreme Court has, thus far, supplied any direct precedent to confirm or reject this Court's conclusion that it possesses AWA authority. In the only

precedential opinion to speak to the matter, the Federal Circuit explicitly withheld judgment on that question in *In re Wick,* concluding that it did not need to reach it because, even if the Court did possesses AWA authority, the petitioner in that case had not justified such relief. *In re Wick,* 40 F.3d at 372–73 n. 3. Nevertheless, the conclusion that this Court possesses AWA authority is strongly supported by analogous existing caselaw. *See Noyd v. Bond,* 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883 n. 7, 23 L.Ed.2d 631 (1969) (noting that the U.S. Court of Military Appeals (now the U.S. Court of Appeals for the Armed Forces), also a Court established under Article I, *see* 10 U.S.C. § 941, possesses AWA authority and that "the [AWA] applies by its terms to *any* 'courts established by Act of Congress'" (emphasis added)); *Anderson v. Commissioner of Internal Revenue,* 693 F.2d 844, 846 (9th Cir.1979) (U.S. Tax Court possesses AWA authority).

The Secretary's position that Article I courts have been found not to possess the inherent powers of Article III courts does have some support. *See Northern Pipeline Const., supra* (Article I courts cannot be given the plenary powers of Article III courts); *In re United States,* 877 F.2d at 1571 ("powers of an Article I court are limited by what has been given it by specific act of Congress and by its own rules adopted pursuant to Congressional authority"). *But see In the Matter of Case,* 937 F.2d 1014, 1023 (5th Cir.1991) (bankruptcy court, like district court, possesses "inherent powers ... based on the need to control court proceeding and necessity of protecting the exercise of judicial authority in connection with those proceedings"); *Ebert,* 4 Vet.App. at 437 ("Court has the power to sanction those who abuse the judicial process under the 'inherent power of the federal courts.'"); *Pritchett v. Derwinski,* 2 Vet.App. 116, 120 (1992) (Court has "inherent" supervisory power over its own records and files). However, raising the questions whether and to what extent this Court possesses "inherent" powers independent of a specific grant of those powers does not address the issue of whether this Court is one "established by Act of Congress" within the purview of 28 U.S.C. § 1651(a) or whether Congress has specifically granted the Court AWA power.

**2. *Plain Meaning of AWA.*** As an initial matter, the Court notes that "all federal courts, except the Supreme Court, are established by Congress". *In re United States,* 877 F.2d at 1571. On its face, the AWA does not discriminate between those Article III courts established by act of Congress pursuant to Article I, section 8 (which provides that Congress has the power "to constitute Tribunals inferior to the supreme Court"), and those "Article I" courts established by Congress pursuant to the plenary powers of Article I. *See Northern Pipeline Constr. Co., supra* (discussing the formation of Article I courts). Indeed, both sorts of courts are "established by Act of Congress". A plain reading of the AWA in conjunction with the 38 U.S.C. § 7251 provision establishing this Court necessitates the conclusion that this Court is one "established by Act of Congress" and therefore empowered with AWA authority by 28 U.S.C. § 1651(a), *see Erspamer, supra,* because no federal court, except the Supreme Court, can be or has been created or imbued with AWA authority in any other manner. *Cf.* 28 U.S.C. § 451 (defining, for the purposes of title 28, U.S.Code, "court of the United States", a term much more narrow than the term, "court established by Act of Congress", used in AWA at 28 U.S.C. § 1651(a)); *Nagler,* 1 Vet.App. at 306 (contrasting with AWA and holding that "Court does not possess the authority to issue declarative relief under the Declaratory Judgments Act", 28 U.S.C. § 2201, because Court is not "Court of the United States" within the definition in 28 U.S.C. § 451 that applies to 28 U.S.C. § 2201).

**3. *AWA as Specific Statutory Authority.*** Although the foregoing analysis should end the matter, because this Court is an Article I court the question may remain whether, if this Court requires a "specific" grant of AWA authority, that specificity has been satisfied. The Court could appropriately conclude that the AWA itself is that specific act of Congress whereby, through use of the word "all", Congress sweeps into its grant of AWA authority *all* courts established by federal law, both those Article III courts pos-

sessing otherwise plenary authority and those Article I courts that do not possess such authority. *Cf. Cleary v. Brown,* 8 Vet. App. 305, 320 (1995) (Steinberg, J., concurring in part and dissenting in part) (28 U.S.C. § 2106 was "express statutory authority" for this Court where it granted authority to retain jurisdiction to "[t]he Supreme Court or any other court of appellate jurisdiction"). The reading of the AWA implied by the Secretary's sporadic position seems to require one of three conclusions: (1) The AWA must itemize every court to be granted AWA authority; (2) Congress must provide a conforming amendment to every court-creating statute already in existence and passed in the future; or (3) AWA authority is an inherent authority of Article III courts.

As to conclusions (1) and (2), this Court will not infer such an obligation where "all" makes the meaning of the statute plain, *see Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed. Cir.1993) ("starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter" (internal quotation marks omitted)), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION [hereinafter SUTHERLAND] § 46.01 (5th ed.1992) (plain meaning rule). As to conclusion (3), such an interpretation is contrary to precedent. *See Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 93–94, 2 L.Ed. 554 (1807); *ITT Community Dev. Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir.1978) (distinguishing AWA and inherent authority and noting that "[t]he [AWA] is necessary because federal courts, being courts of limited jurisdiction, would not otherwise possess the tools necessary to implement their jurisdictional grants"); *United States v. New York Tel. Co.,* 434 U.S. 159, 186–87, 98 S.Ct. 364, 379–80, 54 L.Ed.2d 376 (1977) (Stevens, J., dissenting in part) (AWA "was, and is, necessary because federal courts are courts of limited jurisdiction having only those powers expressly granted by Congress, and the statute provides these courts with the procedural tools—the various historic common-law writs—necessary for them to exercise their limited jurisdiction") (citing *Ex parte Bollman, supra* ). Moreover, conclusion (3)

would render the AWA meaningless, and the Court will not interpret a statute so as to remove from it all meaning. *See Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (repeating "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written"); SUTHERLAND § 46.06 (in statutory construction, each word is to be given effect). The syllogism is simple: (1) All courts created by Act of Congress possess AWA authority; (2) this Court was created by an Act of Congress; (3) therefore, this Court possesses AWA authority.

Finally, the Court notes again that its enabling legislation specifically contemplates in two places the issuance of writs by the Court. *See* 38 U.S.C. § 7265(a), (b).

■ **4. Other Specific Authority.** However, even if the Court were to conclude that the AWA is not itself a specific grant to the Court of the authority therein, the Court nevertheless possesses AWA authority pursuant to the specific grant in 38 U.S.C. § 7261(a)(2) (Court "shall compel action of the Secretary unlawfully withheld or unreasonably delayed"). *See Ebert, supra.* The Secretary has sometimes appeared to have contended that this Court lacks the authority to "compel action of the Secretary unlawfully withheld or unreasonably delayed" in the absence of a final Board decision. However, this position equates a grant of power with a grant of jurisdiction. It is plain that section 7261(a) is not a jurisdictional statute. *See In re Wick,* 40 F.3d at 371 (section "7261 does not provide an independent basis for jurisdiction"). However, although section 7261 confers no independent jurisdiction and thereby requires an independent source of jurisdiction for its deployment, it is in itself a grant of power—a *specific* grant of power—that supplies the Court with the authority to "compel action of the Secretary unlawfully withheld or unreasonably delayed" when the Court otherwise possesses jurisdiction. Because an action unlawfully withheld or unreasonably delayed is precisely the situation to which an AWA writ of mandamus is directed, section 7261(a)—in addition to the specific grant of AWA authority in 28 U.S.C. § 1651(a)—is a specific grant of power, to the

extent that such a specific grant is necessitated by this Court's position as an Article I court. *See Telecommunications Research and Action Ctr. v. FCC,* 750 F.2d 70, 76–77 (D.C.Cir.1984) (Administrative Procedure Act (APA) mandate (5 U.S.C. § 555(b)) that agencies shall "conclude matters presented to them 'within a reasonable time'" and APA authority (5 U.S.C. § 706(1)) that "stipulates that the 'reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed ... indicate a congressional view that ... court's [sic] designated by statute to review agency actions may play an important role in compelling agency action that had been improperly withheld"); *cf. Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 164, 166, 2 L.Ed. 60 (1803) ("By the act concerning invalids, passed in June 1794, vol. 3, p. 112, the Secretary of War is ordered to place on the pension list all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy?"; "where a specific duty is assigned by law, and individual rights depend upon performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy.").

■ **5. Circumstances Justifying AWA Writ.** Ultimately, even where a court possesses the authority to issue a writ of mandamus, that remedy "is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Before a court may issue a writ, a petitioner must demonstrate (1) a clear and indisputable right to the writ and (2) a lack of an adequate alternative means to obtain the relief sought. *See Erspamer,* 1 Vet.App. at 9; *see also Hahnemann Univ. Hosp. v. Edgar,* 74 F.3d 456, 461 (3d Cir.1996). As for the first requirement, the Court in *Erspamer* quoted *United States v. Black* as follows:

The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose;

*but when they refuse to act in a case at all, ... a mandamus may be issued to compel them.*

*United States v. Black,* 128 U.S. 40, 48, 9 S.Ct. 12, 14, 32 L.Ed. 354 (1888) (emphasis added); *Erspamer, supra; see also Edgar, supra* ("writ of mandamus is a drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power") (internal quotation marks omitted) (quoting *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)). The Court thus turns to the question of the availability of a writ in the two specific instances raised by the petitioner.

## C. Jurisdiction over Petition for Writ Ordering BVA to Issue Final Board Decision and Petitioner's Right to Writ

Even though the Court is empowered pursuant to the AWA to issue a writ of mandamus, the question remains whether the Court possesses jurisdiction to issue a writ ordering the BVA to issue the final, appealable decision sought by the petitioner in this case.

■ **1. In Aid of Prospective Jurisdiction.** The Court has jurisdiction to review a final BVA decision only where an NOD was filed on or after November 18, 1988, as to the underlying RO decision. *See* VJRA § 402. In the instant case, it is true that there is no BVA decision for the Court to review; however, the Court is not here concerned with the direct appeal of a BVA decision but with the petitioner's right to a BVA decision that would confer upon this Court jurisdiction to review the legal conclusion underlying the BVA's refusal to issue such a decision. As the following discussion demonstrates, jurisdiction to issue a writ of mandamus pursuant to the AWA relies upon not *actual* jurisdiction but *potential* jurisdiction. In other words, the Court's jurisdiction to issue the order sought by the petitioner depends upon whether the Court would have jurisdiction to review the final BVA decision that would issue pursuant to that order. As the Supreme Court has held:

As the jurisdiction of the circuit court of appeals is exclusively appellate, its authority to issue writs of mandamus is restricted

by statute to those cases in which the writ is in aid of that jurisdiction. Its authority is not confined to the issuance of writs in aid of jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.

*Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 24–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *see also McClellan v. Carland,* 217 U.S. 268, 280, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910) ("we think it the true rule that where a case is within the appellate jurisdiction of the higher court, a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below") (citing *Knickerbocker Ins. Co. v. Comstock,* 83 U.S. (16 Wall.) 258, 270, 21 L.Ed. 493 (1872)).

The U.S. Court of Appeals for the District of Columbia Circuit summarized the applicable AWA law as follows:

> [S]tatutory commitment of review ..., read in conjunction with the [AWA], affords this court jurisdiction over claims of unreasonable Commission delay.... Here, of course, there is no final order—indeed, the lack of a final order is the very gravamen of the petitioner's complaint. This lack of finality, however, does not automatically preclude our jurisdiction.... [AWA authority] extends to support an ultimate power of review, even though it is not immediately and directly involved.... In other words, section 1651(a) empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction.

*Telecommunications Research and Action Ctr.,* 750 F.2d at 75; *see also United States v. Christian,* 660 F.2d 892, 894 (3d Cir.1981) ("[t]o satisfy the [AWA] jurisdictional prerequisite, it is not necessary that a case be pending in the court asked to issue the writ ... [;] it suffices that the case may at some future time come within the court's appellate jurisdiction"). In short, if the Court's granting of the petitioner's petition would lead to a BVA decision over which the Court would have jurisdiction, the Court would possess jurisdiction to issue a writ of mandamus; VA cannot frustrate this Court's statutory appellate jurisdiction by refusing to issue an otherwise required decision that the Court could directly review. *See Christian,* 660 F.2d at 895 ("cases in which, absent resort to mandamus, we would lose our ability to review the issue at all, present a wholly consistent example of mandamus as necessary for the exercise of our jurisdiction").

As the D.C. Circuit has stated: "Before entertaining the [AWA] application, then, we must identify a jurisdiction that the issuance of the writ might assist." *Christian,* 660 F.2d at 894. The Federal Circuit observed in *In re Wick* as to the very situation underlying this case—VA's failure to withhold a 20% fee from a past-due VA benefit award and VA's refusal to pay the attorney the amount it should have withheld: "The [AWA] does not augment the jurisdiction of a court, and [the petitioner] has not established that, without the extraordinary writ, the court will be prevented or frustrated from exercising its statutorily granted jurisdiction over a Board decision." *In re Wick,* 40 F.3d at 373. The Federal Circuit did not find the requisite circumstances present on the facts of *In re Wick.* However, the petitioner's situation in this case is not accounted for by *In re Wick,* for there the action of this Court vacated by the Federal Circuit was its ordering of the Secretary to pay the petitioner the attorney fees erroneously forwarded to the attorney's client. *In re Wick, supra.* Hence, to the extent that the petitioner here seeks a similar remedy, *In re Wick* makes clear that the Court lacks authority to grant it directly without there being any BVA decision on the matter. *See* part II.A., above. However, the petitioner also petitions the Court to order the BVA to issue a final decision, and the petitioner in the instant case has specifically and repeatedly sought a final BVA decision on the issue in question and has been denied one. This is precisely the situation for which the AWA is meant: If the BVA otherwise has the authority and obligation to issue a decision, its refusal to do so would frustrate this Court's jurisdiction and, if the other requirements for an extraordinary writ are met, would justify our issuance of a writ. *See Erspamer,* 1 Vet.App. at 8 ("[AWA] jurisdiction is particularly applicable where, as here, an alleged refusal to act would forever

frustrate the ability of a court to exercise its appellate jurisdiction"); *Telecommunications Research and Action Ctr.*, 750 F.2d at 76 n. 28 ("authority of an appellate court to issue mandamus to an agency is analogous to its authority to issue the writ to District Courts").

**2. *Indisputable Right to Writ.*** The Secretary erroneously argues that, because *In re Wick* suggests that the Court's review of a fee agreement under 38 U.S.C. §§ 7252(a) and 7263 is limited to reviewing and ordering a reduction if the agreement is "excessive or unreasonable", *In re Wick*, 40 F.3d at 371; *see also Matter of Smith in Case No. 90–58*, 1 Vet.App. at 495–96, the Court would lack jurisdiction to review a Board decision pursuant to the petitioner's claim. Ans. at 9. In this respect, *In re Wick* was concerned solely with limitations under section 7263, which states that the Court "may review" a fee agreement filed by an attorney representing an appellant before the Court. If the BVA has jurisdiction to issue a decision on the petitioner's claim for VA payment to him of the 20% fee wrongfully denied him by VA, review in this Court would be pursuant to a review of that Board decision as authorized by 38 U.S.C. § 7252(a). In such a case, the Court would not be reviewing the validity of the fee agreement (pursuant to sections 7252(a) and 7263(c), (d)) but the validity of the Board's interpretation of the applicable law (38 U.S.C. § 5904; 38 C.F.R. § 20.609) and its reading of the facts. *See* 38 U.S.C. § 7252(a) ("Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans Appeals"); 38 U.S.C. § 7261(a) (Court reviews Board's factual findings under "clearly erroneous" standard and "hold[s] unlawful and set[s] aside decisions, findings (other than [factual findings]), conclusions, rules, and regulations issued or adopted by the Secretary, the [BVA], or the Chairman of the Board" found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law").

The Secretary argues that the BVA's jurisdiction is limited by 38 U.S.C. § 7104(a) to matters under section 511(a) of title 38, U.S.Code, and that the Board therefore "lacks jurisdiction to order the VARO to pay an attorney's fee." Ans. at 8. However, whether the Board lacks authority to order payment of the fee is a matter entirely separate from whether it lacks jurisdiction to hear that claim and issue a decision on its merits or lack thereof. Section 511(a) provides:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.

38 U.S.C. § 511(a). Section 7104(a) provides:

> All questions in a matter which under section 511(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board.

38 U.S.C. § 7104(a).

By its very wording, section 5904(d) is a statute "affect[ing] the provision of benefits" by VA as referred to in section 511(a)—it gives the Secretary the authority to withhold a portion of past-due benefits otherwise due to a VA claimant and pay those withheld benefits to an attorney, pursuant to an otherwise valid fee agreement. Had the Secretary, for instance, withheld *more* than was called for under the provisions of an otherwise valid fee agreement and delivered that amount to an attorney, the "provision of benefits" to the veteran would plainly be "affect[ed]", and the veteran would have recourse before the RO, the BVA, and this Court (as long as all of the other jurisdictional requirements were met). Moreover, the language of section 511(a) appears specifically to deny a person in such a situation the opportunity to seek a writ of mandamus before any *other* court, *see* 38 U.S.C. § 511(a) ("Subject to subsection (b) [which includes "matters covered by chapter 72 of this title"—matters that can be appealed to this Court], the decision of the Secretary as to any such question shall be final and conclu-

sive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.").

Section 511(a) bases the Secretary's jurisdiction not upon an *actual* effect upon a *particular* claimant's benefits but upon whether the law to be interpreted is one that "*affects* the provision of [VA] benefits". 38 U.S.C. § 511(a) (emphasis added). Section 5904(d) is clearly such a law. Furthermore, because section 511(a) is mandatory—"the Secretary *shall* decide", *ibid.* (emphasis added)—VA is without discretion to refuse to review and issue a decision on a matter within its jurisdiction, and the Board's derivative section 7104(a) jurisdiction is likewise mandatory—"shall be subject to one review"—for an appeal properly before it. *See Mintz v. Brown,* 6 Vet.App. 277, 281 (1994) (because section 511(a) review is mandatory, Board has no "discretion to decide whether or not to exercise jurisdiction"; if Board has jurisdiction, it must exercise it, so "question is ... whether the BVA lacked jurisdiction"); *Bernard v. Brown,* 4 Vet.App. 384, 391 (1993).

In this case, as the discussion in part II.C.3., below, indicates, it appears that there was not a jurisdiction-conferring NOD that would have supplied the Board with jurisdiction to review the petitioner's claim. However, the Court need not reach a definite conclusion on whether the petitioner has shown an indisputable right to the writ—the first requirement for a writ of mandamus—because it is clear that the second requirement is not satisfied insofar as the petitioner possesses an adequate alternative means to obtain the relief sought.

**3. *Alternative Remedy to Obtain Relief.*** As to the availability of an alternative remedy, although the Secretary has contended that the petitioner has recourse against the veteran for payment of attorney fees, the existence of such an alternative remedy has no bearing upon the petitioner's ***entitlement to a final BVA decision*** on the question of VA's liability for payment of such fees. *See* part II.D., below. Nevertheless, for the reasons that follow, the Court concludes that the requirements for the writ are not satisfied in this case because the appellant still possesses adequate alternative means to obtain the relief—an appealable Board decision—he seeks.

***a. Appealable RO decisions:*** In order to determine whether the petitioner has an adequate alternative remedy, we must decide what options have been and presently are open to him to obtain the relief he seeks, and to do that we must start by determining the nature of the RO actions already taken pertaining to this matter. *See Tablazon v. Brown,* 8 Vet.App. 359, 361 (1995) (in order to determine its jurisdiction over appeal, Court examined 1975 RO decision and found that Board had incorrectly treated that decision as final, by requiring new and material evidence to reopen as to 1975 RO denial of claim, and dismissed appeal as to same claim because there was no final BVA decision before the Court given its holding that 1975 RO decision was still open in view of VA's failure to provide required Statement of the Case (SOC) after NOD had been filed as to 1975 RO decision). In 1992 and 1995, the RO responded to the petitioner's claims for payment of attorneys fees with letters denying that payment. In the 1992 letter, the RO stated:

> We have reviewed this case and find that you are entitled to a fee of 1/5 of past due benefits....

> Since this case was not referred to the [BVA] the award procedure did not include consideration of payment of attorney fees. Payment was made to the claimant and VA will be unable to pay your fee from past due benefits as these benefits have already been disbursed. We regret the error but any adjustment of the fee must be arranged between you and [the veteran]. We will inform [the veteran] of our error and the fee that is payable to you.

Pet. at Ex H; Ans. at Ex. 13. The 1995 letter, which came after the Federal Circuit's decision in *In re Wick,* came to a similar conclusion:

> On November 7, 1994, the U.S. Court of Appeals for the Federal Circuit reversed the CVA decision in *Wick v. Brown,* 40 F.3d 367 (Fed.Cir.1994), finding that the CVA lacked jurisdiction to review Mr.

Wick's petition to compel VA to pay attorney fees.

Under the circumstances, we are constrained to follow a 1992 precedent opinion of the VA General Counsel (O.G.C.Prec.27–92) in which it was held that VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant.

Pet. at Ex. H; Ans. at Ex. 20.

In the normal course of VA adjudication, a claimant who wishes to appeal an adverse RO decision files an NOD and then, after the RO has filed a SOC, perfects an appeal to the Board by filing a VA Form 9 (Substantive Appeal to BVA). *See Grantham*, 114 F.3d at 1159 (Archer, Chief Judge, concurring); *Hamilton*, 4 Vet.App. at 533; *Bernard*, 4 Vet.App. at 390–92 (detailing the "series of very specific, sequential, procedural steps that must be carried out" to acquire appellate review); 38 U.S.C. § 7105; 38 C.F.R. § 20.201 (1996).

█ The Court's January 9, 1997, order sought additional filings from the parties to determine whether a VJRA § 402 jurisdiction-conferring NOD had been filed as to the petitioner's claim. The petitioner's response contends that the jurisdiction-conferring NOD is the one underlying the claim of the veteran he represented. Memorandum in Response at 1. Although it is true that, absent a VJRA § 403 jurisdiction-conferring NOD as to the veteran's underlying claim, the Court possesses no authority to review a fee agreement, *see Matter of Smith in Case No. C 21 317 717*, 6 Vet.App. at 26–27, the Court has concluded, in part II.C.1., above, that, notwithstanding that question posed in the January 9, 1997, order, the jurisdiction-conferring properties of an actual NOD are not presently at issue. As the Court there concluded, a writ of mandamus may issue where the Court would have jurisdiction over an eventual BVA decision even though there is no vested jurisdiction over a present BVA decision. In any event, any NOD as to the petitioner's attorney-fee claim would, by definition, have to be subsequent to the jurisdiction-conferring NOD of the veteran as to the claim he appealed to the Court and thus would come after November 18, 1988, *see* VJRA §§ 402, 403.

█ Rather, the instant issue is whether a writ of mandamus may properly issue where the petitioner had adequate alternative means that he left unpursued by failing to file an NOD. The Secretary contends that "there can be no *notice of disagreement* within the meaning of 38 U.S.C. § 7105 and 38 C.F.R. § 20.201 where, as here, there has been no adjudicative decision by the *agency of original jurisdiction* over a matter cognizable under 38 U.S.C. § 511." Reply at 2. However, as the Court concluded above, the matter in question was certainly "cognizable" under section 511. Moreover, the Court concludes that the 1992 and 1995 RO letters constituted appealable decisions of the RO insofar as they rejected the petitioner's claim by concluding that he was entitled to no redress for VA's wrongful failure to withhold attorney fees from past-due benefits. The petitioner's appropriate remedy, subsequent to either or both of these decisions, was to initiate the appellate process for obtaining review by the BVA; absent an NOD, an SOC, and a Form 1–9, the BVA was not required—indeed, it had no authority, *see Bernard, supra*—to proceed to a decision. Here, the Court can find no NOD as to the 1992 or 1995 RO decisions denying him the payment he sought that would require the RO to issue an SOC and initiate the appellate process. A petitioner who has administrative alternatives and who loses them by failing to pursue them is not entitled to a writ of mandamus. *See Anderson, supra* (taxpayers who failed to file available appeal from decision could not later seek mandamus remedy). Thus, because the petitioner had means to effectuate an appeal—which he neglected by failing to file an NOD and choosing, instead, to file motions directly with the Board and petitions to this Court—mandamus would normally not be in order. However, the tale does not end yet, because the Court must determine whether the petitioner has, indeed, failed to pursue such a direct appeal to the BVA.

█ ***b. Lack of notice of appellate rights:*** Section 5104(a) states that, in the case of a decision under section 511(a), notice

of a decision "shall include an explanation of the procedure for obtaining review of the decision." 38 U.S.C. § 5104(a); *see* 38 C.F.R. § 3.103(b) (1996); S.REP. No. 101–126, at 294, 296 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1469, 1700, 1702. In *Holland v. Brown*, the Court stated:

> The Court notes that this claim would still be open if notice of appellate rights as to that claim had not been provided with the denial of the claim (the ROA does not indicate one way or the other). *See* 38 U.S.C. § 5104(a); *Hauck v. Brown*, 6 Vet. App. 518, 519 (1994) (per curiam order) (holding that where appellant "never received notification of any denial . . ., the one-year period within which to file an NOD, which commences with the 'date of mailing of notice of the result of initial review or determination,' did not begin to run").

*Holland*, 9 Vet.App. 324, 331 (1996), *mot. for recons. den.*, 10 Vet.App. 42 (1997) (en banc per curiam order); *see also Tablazon, supra* (relying on *Hauck, supra,* and concluding that "where VA has failed to procedurally comply with statutorily mandated requirements, a claim [denial] does not become final for purposes of appeal to the Court"); *Thompson (Charles) v. Brown,* 8 Vet.App. 169, 175–77 (1995) (holding that section 5104(a) notice of appellate rights must be mailed with BVA decision), *reconsidered on other grounds,* 8 Vet.App. 430 (1995), *reaff'd,* 9 Vet.App. 173 (1996). Thus, because the 1992 and 1995 RO letters were appealable decisions, VA was required to attach a statement of appellate rights, and there is no indication that such a statement was attached to either decision—neither letter indicates, as would be usual, any such enclosure. The Court thus holds that, absent the inclusion of a statement of appellate rights, those RO decisions remain open, and the time for filing an NOD was and remains tolled. *See Holland, Tablazon, Thompson,* and *Hauck,* all *supra.* Accordingly, the petitioner not only possessed before but still possesses the alternative remedy of filing an NOD as to either the 1992 or 1995 RO decision, or to both, and pursuing to the Board his quest for its review of the RO decisions that, as determined under part II.C.2., above, the Board must carry out pursuant to its ***mandatory*** review authority under sections 511(a) and 7104(a). Therefore, the Court concludes that the petitioner did not ***fail*** to pursue a direct appeal to the BVA because he can ***still*** file an NOD that would secure him the BVA decision he seeks.

 *c. Futility of pursuing alternative remedy:* That does not end the matter, however. It is well-settled under AWA law that a petitioner need not pursue an alternative remedy that is futile. *See Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384–85, 74 S.Ct. 145, 148–49, 98 L.Ed. 106 (1953) (mandamus "should be resorted to only where appeal is a clearly inadequate remedy") (quoting *Ex parte Fahey,* 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947)). In the instant case, because the only issue before the Court is whether the petitioner could have gotten a ***BVA decision,*** it is not clear that the Deputy Vice Chairman's repeated responses stating that VA possessed no authority to provide the petitioner with the substantive relief that he sought (Pet. at Exs. I, K; Ans. at Exs. 22, 24) indicate that pursuing the normal appellate route would have been futile. The possibility of the petitioner's obtaining through the usual appellate process a BVA decision stating that VA possesses no authority to pay him the 20% fee—rather than one actually granting attorney fees—would be an effective, and preferable, alternative to a writ of mandamus ordering the issuance of a BVA decision.

Therefore, the Court holds that the petitioner has an adequate alternative means to obtain the specific relief he seeks, a final BVA decision on the fee-payment matter. *See Hahnemann Univ. Hosp.,* 74 F.3d at 461 ("writ of mandamus should not be issued where relief may be obtained through an ordinary appeal"); *Erspamer,* 1 Vet.App. at 9.

### D. Jurisdiction over Petition for Writ Ordering Payment of Attorney Fees

 To the extent that the petition before the Court is simply one for the payment of attorney fees owed to the petitioner, the

issuance of a writ ordering the Secretary's payment is plainly barred in this case by *In re Wick*, which held that the Court could not order the Secretary to pay attorney fees that he erroneously failed to withhold from past-due benefits (absent jurisdiction over a BVA decision) or issue a writ of mandamus so ordering (absent indication that the Court's jurisdiction would otherwise be frustrated). *In re Wick*, 40 F.3d at 371–73. In the instant case, the Court lacks a BVA decision over which it has appellate jurisdiction.

■■■ As a tangential matter, the Secretary and his agents at the RO and BVA have suggested that the petitioner's recourse is with the veteran, to whom the Secretary paid the full amount of past-due benefits. In his October 1995 petition, the petitioner stated that the veteran had already made payments totaling $4,100 of the $7,481.60 owed him (Pet. at 6–7), but his response to the Court's January 9, 1997, order states that he has received no additional payments. Nonetheless, it would seem that the petitioner retains a contract-law remedy against the veteran for the remainder of the fee owed. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (1977) ("as a general rule, ... when rights are assigned, the assignor's interest in the rights assigned comes to an end ... [; w]hen duties are delegated, however, the delegate's [here, the Secretary's] obligation does not end"). The requirements for mandamus place an affirmative burden upon the petitioner to show that this alternative avenue has been exhausted or is closed to him. *Cf. Wick v. United States*, No. 95–618C (Fed.Cl. May 20, 1996) (order) (concluding, inter alia, that attorney seeking recovery of attorney fee Secretary failed to withhold "has not set forth a claim upon which relief can be granted within the statutory jurisdiction granted to the United States Court of Federal Claims").

### III. Conclusion

This matter has now been in dispute between the parties for more than five years. The long delay highlights the complexities surrounding the interaction of 38 U.S.C.

§§ 7263 and 5904. The Court today concludes both that, if the petitioner files a timely NOD, the Secretary and Board possess authority—indeed, the obligation—pursuant to sections 511(a) and 7104(a), to issue a Board decision stating whether the petitioner is entitled to VA payment of attorney fees, and that any such interpretation of law ensconced in a BVA decision may be appealed to this Court for review under 38 U.S.C. § 7252(a). Nevertheless, under current caselaw, it appears—as a result of the Federal Circuit's decision in *In re Wick*—that the Court has jurisdiction to review a fee agreement, per se, only to "order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable", 38 U.S.C. § 7263(d), and lacks the authority to provide any other remedy—such as enforcement or even perhaps a declaration that an agreement is invalid. If the intent of Congress was or is to the contrary, this Court appears to lack the means to effectuate any such contrary intent under its current statutory authority, and a legislative remedy may be in order. However, an authoritative decision as to whether, and to what extent, the limitations of *In re Wick* and section 7263(d) constrain any decision concerning the Board's interpretation of section 5904(d) must await a decision on direct review to this Court in this or some other case.

In light of the long delay—delay occasioned in part, no doubt, by this Court's prior conclusion in *In re Smith*, 4 Vet.App. at 500, that the petitioner's appropriate remedy was to file with the Board a motion for review of a fee agreement pursuant to 38 C.F.R. § 20.609(i), a conclusion that the Court has no occasion to revisit today in light of its conclusion that, upon the petitioner's filing of an NOD with the RO, the Board would have jurisdiction over his claim pursuant to section 511(a) and 7104(a)—the Court expects that the Board will provide an expeditious decision on that claim if the petitioner now files an NOD as to either the 1992 or 1995 RO decisions.

For the foregoing reasons, the appeal is dismissed for want of jurisdiction and the petitioner's petition for a writ of mandamus is denied.

APPEAL DISMISSED; PETITION DENIED.