# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-1051

NETTIE CASEY, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 23, 2019)            Decided June 26, 2019)

*Erin E. Ralston*, with whom *Daniel G. Krasnegor* and *Krystle D. Waldron*, all of Glen Allen, Virginia, were on the briefs for the appellant.

*Jessica K. Grunberg*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and ALLEN and MEREDITH, *Judges*.

ALLEN, *Judge*: The appellant Nettie Casey is the surviving spouse of veteran Jared D. Casey, who served the Nation honorably in the United States Air Force.[1] As we explain in detail below, the road to this appeal began when VA paid Mrs. Casey $91,066, the accrued benefits her husband was owed at the time of his death. There is no dispute that the amount of accrued benefits was accurate to the penny. So, one quite naturally might wonder how an entirely accurate accrued benefits calculation could lead to a Federal appeal. The problem is that VA should have paid only $72,852.80 of the total accrued benefits award to Mrs. Casey. The balance ($18,213.20) should have been paid to her attorney according to a fee agreement. No one contests these facts.

When VA became aware of this mistake, it paid Mrs. Casey's attorney $18,213.20, which created an overpayment with respect to the appellant, and attempted to recoup that amount from her. This action was designed to leave her with the 80% of the accrued benefits she was entitled to and provide her representative with the 20% he was due under the fee agreement.

---

[1] Record (R.) at 3, 184.

The appellant appeals a March 22, 2017, decision of the Board of Veterans' Appeals that found that this overpayment of $18,213.20 was properly created. This appeal, which is timely and over which the Court has jurisdiction,[2] turns on whether 38 U.S.C. § 5112(b)(10), and its implementing regulation, 38 C.F.R. § 3.500(b)(2), apply to defeat the proper creation of an overpayment in such a situation.

Section 5112(b)(10) provides: "The effective date of a reduction or discontinuance of compensation, dependency and indemnity compensation, or pension by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of last payment." There are four operative words and phrases at issue in this case: "reduction"; "compensation, dependency and indemnity compensation, or pension"; "erroneous award"; and "based solely on administrative error." As we will explain, the key term in this statutory provision for our purposes is "reduction." If the overpayment amount of $18,213.20 is a "reduction" in accrued benefits, then the appellant might be able to escape recoupment of that amount if she could show that (1) "compensation, dependency and indemnity compensation, or pension" includes accrued benefits; (2) there was an "erroneous award"; and (3) the erroneous award was "based solely on administrative error."[3]

After considering the statutory language, we hold that VA's recoupment of attorney fees mistakenly paid to an accrued benefits recipient as part of the one-time payment of an accrued benefits award does not result in a "reduction." Therefore, section 5112(b)(10) doesn't apply to defeat the proper creation of an overpayment here. Correspondingly, because there was no "reduction," we need not consider whether there was an erroneous award based solely on administrative error.[4] So, the Court will affirm the March 22, 2017, Board decision.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties don't dispute any of the dispositive facts. Nevertheless, we describe them in some detail to provide the foundation for our decision. Between an October 2012 VA decision

---

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[3] 38 U.S.C. § 5112(b)(10); 38 C.F.R. § 3.500(b)(2).

[4] As explained below, however, the phrase "compensation, dependency and indemnity compensation, or pension" does not include accrued benefits.

2

granting several of the veteran's claims[5] and payment of the retroactive accrued benefits award at issue in July 2013, the appellant's spouse died in January 2013.[6] In February 2013, the appellant entered into a fee agreement with the current counsel of record,[7] appointed him her representative,[8] and then notified VA of this appointment in March 2013.[9] Under that fee agreement, the appellant agreed to pay counsel 20% of any award she received and specifically authorized and requested that VA withhold the fee from the payment of any award she was due and disburse it to counsel.[10] This is an arrangement authorized by statute and VA regulations that require VA to make such a payment to counsel as long as the regulatory requirements are satisfied.[11]

On June 12, 2013, the appellant applied for dependency and indemnity compensation (DIC) and substitution.[12] Two days later, VA awarded her DIC, effective January 7, 2013.[13] In a July 5, 2013, rating decision, VA substituted the appellant into her late husband's administrative appeal[14] and granted her claim for accrued benefits in the amount of $91,066.[15] VA deposited that amount in the appellant's bank account on July 8, 2013.[16] No one disputes that the amount of accrued benefits is correct. We pause to note that there are two distinct VA benefits here: The grant of accrued benefits in July 2013, which was paid to the appellant in one lump sum, and the separate grant of DIC, which is paid to the appellant monthly. We return to the distinction below.

On October 15, 2014, VA wrote a letter to the appellant informing her that it'd received notification from her counsel that VA hadn't withheld attorney fees from the accrued benefits

---

[5] R. at 278-84, 316-25. Though the case doesn't turn on the nature of these claims, they were various service-connection claims and a special monthly compensation claim. *Id.* These are the claims that ultimately resulted in the accrued-benefits award.

[6] R. at 174.

[7] R. at 134-42.

[8] R. at 143-44.

[9] R. at 134.

[10] R. at 136.

[11] *See* 38 U.S.C. § 5904(d); 38 C.F.R. § 14.636 (2018). *See generally Snyder v. Nicholson*, 489 F.3d 1213 (Fed. Cir. 2007).

[12] R. at 185-94, 196-97.

[13] R. at 176-79, 182-84.

[14] *See* R. at 158.

[15] R. at 158-61.

[16] *See* R. at 10.

payment and so proposed to create an overpayment to recoup the $18,213.20 attorney fees.[17] This recoupment would have placed the appellant and her counsel in the positions they should have occupied if VA had properly divided the accrued benefits award. The recoupment would not have changed the amount of the accrued benefits award, which remained $91,066. VA informed the appellant that she could pay the fee to her lawyer directly and notify VA that she'd done so to avoid the creation of an overpayment.[18] The record doesn't indicate that the appellant ever responded to this letter, and the appellant does not suggest that she did.

In two February 2015 letters, VA recapped the earlier events, mentioned it hadn't received a response from the appellant, and informed her that it had created an overpayment in the amount of $18,213.20 because she owed VA a debt to account for the attorney fees it had mistakenly paid her.[19] VA further informed her that, to recoup the attorney fees, it planned to start withholding from the monthly DIC benefits she was currently receiving and that she had a right to request a waiver.[20] Although we will discuss this matter further below, it bears mentioning now that the appellant never sought a waiver of the overpayment.

On September 11, 2015, the appellant disagreed with VA's creation of an overpayment, asserting that it wasn't validly created because it arose as a result of sole VA administrative error; to support this assertion, she cited 38 C.F.R. § 3.500(b)(2).[21]

On November 24, 2015, VA issued a Statement of the Case concluding that VA had properly created an overpayment.[22] On December 14, 2015, the appellant perfected her appeal to the Board, reiterating her prior argument.[23]

In its March 22, 2017, decision, the Board found that VA had properly created an overpayment of accrued benefits in the amount of $18,213.20.[24] The Board reasoned that, contrary to the appellant's assertion, section 5112(b)(10) and § 3.500(b)(2) didn't apply to make the

---

[17] R. at 122-25.

[18] R. at 123.

[19] R. at 103-06.

[20] R. at 105-06.

[21] R. at 67-72.

[22] R. at 43-64.

[23] R. at 35-36, 25-28.

[24] R. at 12.

overpayment creation improper because no "reduction" occurred because the "appellant underwent no change in circumstances and VA did not reduce . . . any ongoing benefit payment."[25] The Board said that, "while the VA action was clearly erroneous, the error was not made in relation to any reduction . . . but merely in relation to a distribution. Consequently, it cannot be construed as the type of action[] which would lead to the improper creation of an overpayment."[26] Even if "the erroneous distribution could be construed as involving reduction," the Board further reasoned, the error didn't constitute sole administrative error because the appellant knew or should have known that the payment was erroneous.[27] This appeal followed.

## II. ANALYSIS

We must determine whether section 5112(b)(10) applies in this case to defeat the otherwise proper creation of an overpayment. That determination requires us principally to interpret section 5112(b)(10). After employing the tools of statutory interpretation, we hold that no "reduction" occurred under that statutory provision making its terms inapplicable to the appellant.

Before we turn to the meaning of section 5112(b)(10), we address in more detail an issue that bears on our analysis. As we noted above, the appellant received two forms of benefits from VA. The first is the accrued benefits to which her husband was entitled, but which were unpaid at the time of his death.[28] This is the $91,066 that the appellant was paid and the amount from which the attorney fees should have been taken.[29] The second benefit is the DIC benefits to which the appellant is independently entitled.[30] Those benefits are continuing ones that are paid monthly and from which the overpayment was recouped.[31] The question essentially is which of these benefits is relevant for our consideration of whether there is a "reduction" under the statute.

In this regard, we note that the appellant hasn't consistently advanced a single theory as to the purported "reduction" in this case. In her supplemental brief, she argued that the "reduction"

---

[25] R. at 10-11.

[26] *Id.* (citing 38 U.S.C.A. § 5112(b)(10); 38 C.F.R. § 3.500(b)(2)).

[27] R. at 5 (citing *Jordan v. Brown*, 10 Vet.App. 171 (1997)), 11.

[28] *See* R. at 158-61.

[29] *See id.*

[30] *See* R. at 176-79, 182-84.

[31] *See* R. at 105-06.

that triggers section 5112(b)(10)'s application here is VA's "reduction" of her ongoing DIC payments.[32] In other words, she focused attention on the fact that VA was reducing her monthly *DIC* payments in order to recoup the overpayment created by the *accrued benefits* payment error. However, in response to questioning at oral argument the appellant's counsel made clear that the appellant's argument about section 5112(b)(10) did not, in fact, depend on the existence of the running DIC payments.[33] So, even if the appellant had only received the one-time payment of accrued benefits and VA had made the same error—failing to withhold 20% of the accrued benefits to be paid directly to her attorney—she would make the same argument that there was a "reduction" in accrued benefits.

We agree with the appellant's concession that the fact that she happened to be receiving monthly DIC benefits is coincidental. Once VA created the overpayment based on the accrued benefits payment error, the DIC payment stream was merely the means by which to collect the overpayment. In that regard, 38 U.S.C. § 5314 permits the Secretary to "deduct the amount of the indebtedness of any person who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary."[34] Under this provision and consistent with the appellant's concession at oral argument, we will ignore the appellant's DIC payments for purposes of identifying a "reduction" under section 5112(b)(10) and focus on whether the appellant's accrued benefits were reduced.

A. Statutory Interpretation: The Basics

Statutory interpretation is a pure question of law that the Court reviews de novo.[35] The basics of statutory interpretation are well established. "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'"[36] Of course, this focus on statutory language does not mean that other indications of congressional

---

[32] Appellant's Supplemental Memorandum (Supp. Memo.) at 5.

[33] Oral Argument at 15:15-17:30, *Casey v. Wilkie*, U.S. Vet. App. No. 18-1051 (oral argument held Apr. 23, 2019), https://www.youtube.com/ watch?v=pEtZeJ5oRWo [hereinafter O.A.].

[34] 38 U.S.C. § 5314(a).

[35] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[36] *Artis v. District of Columbia*, __ U.S. __, __, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute is its language.").

intent are off the table. As the Supreme Court recently reminded us, considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific statutory provision.[37] Moreover, "the statutory scheme as a whole, the specific context in which [a] word or provision at issue is used, and the broader context of the statute as a whole" all inform any statutory provision's plain meaning.[38] Accordingly, the Court should construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."[39] The goal of this interpretive endeavor is to identify and implement Congress's purpose in enacting a given statute.[40] If, after this multifaceted exercise, we conclude that Congress's intent is clear, we end our inquiry and give effect to that intent.[41]

## B. Section 5112(b)(10)'s Meaning

We begin with the statutory language. To reiterate, section 5112(b)(10) states: "The effective date of a reduction or discontinuance of compensation, [DIC], or pension by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of last payment." We will assume initially that a grant of accrued benefits, resulting in a one-time payment of those benefits, such as occurred here, could be considered compensation, DIC, or pension under the statute. We will focus on whether, under the facts we confront, there was a "reduction" in those accrued benefits.[42]

Nowhere in title 38 (including in section 5112) did Congress define "reduction." Nor is there a relevant special legal definition of this term. But these facts don't stop our plain meaning inquiry because we can look to the ordinary meaning of "reduction."[43] "Reduction" is "the act or

---

[37] *See Hughes v. United States*, __ U.S. __, __, 138 S. Ct. 1765, 1774 (2018).

[38] *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (holding that all parts of a statute must be construed together without according undue importance to a single or isolated portion).

[39] 2A NORMAN J. SINGER ET AL., SUTHERLAND ON STATUTORY CONSTRUCTION § 46:6 (7th ed. 2007) [hereinafter SUTHERLAND]; *see Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000).

[40] *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))).

[41] *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

[42] At oral argument, the appellant argued that the purported "reduction" happened retroactively to the payment of accrued benefits. O.A. at 16:30-18:10.

[43] *See Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015) ("In the absence of an express definition, words

7

process of reducing," and "reducing" in turn is defined most relevantly as "to diminish in size, amount, extent, or number." [44] As explained below, although section 5112 allows VA to retroactively reduce how much a claimant was entitled to receive in specified circumstances, there is no dispute here that the accrued benefits calculation was correct. The question is whether the one-time lump sum payment could later be "reduced." Contrary to the appellant's argument,[45] VA can't diminish a one-time accrued-benefits payment in size or amount retroactively. What VA paid, it paid; VA can't change the past. What it can do is *recover* any excessive amount it paid. Nor is a grant of benefits diminished in size or amount simply because the total benefit must be apportioned and paid to two parties.[46] The fact that VA could recover part of an excessive payment made by mistake doesn't mean that the initial grant itself was reduced. Because neither the payment nor the initial grant of appellant's accrued benefits was reduced, we hold that section 5112(b)(10) doesn't apply here.

This plain reading of "reduction" is reinforced when we consider the specific statutory mechanism by which VA pays attorney fees from such one-time payments as accrued benefits, 38 U.S.C. § 5904(d). As the Secretary explains,[47] when VA pays attorney fees under section 5904(d), it doesn't reduce the *amount* of accrued benefits; it allocates the *payment* to different payees.[48] The amount of benefits that resulted in such a one-time payment doesn't change when VA pays attorney fees under section 5904(d) out of the appellant's accrued benefits.[49] In no event—whether VA correctly paid the attorney fees in the first instance or failed to do so and

---

are given their ordinary meaning.").

[44] *See* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary (last visited May 23, 2019).

[45] O.A. at 16:30-18:10.

[46] *See In re Fee Agreement of Smith*, 4 Vet.App. 487, 495 (1993) (explaining that, "[w]here a claimant and an attorney have entered into a [section] 5904(d) contingency fee agreement, the claimant and the attorney share a joint entitlement to the fund of any past-due benefits awarded with the exact amount of each's entitlement governed by the fee agreement," and that, where the Secretary mistakenly pays the entire amount of the award to the claimant, he "may seek to recoup the amount of the overpayment from the recipient to whom it was mistakenly paid, and the recipient is free to seek a waiver of the collection of the overpayment if such collection would be against equity and good conscience."), *vacated on other grounds by In re Wick*, 40 F.3d 367 (Fed. Cir. 1994).

[47] Secretary's Supp. Memo. at 4-5.

[48] *Id.* at 4 (citing R. at 136 (fee agreement authorizing VA to "withhold such payment [of attorney fees] from any award . . . and to disburse the same to Attorney")).

[49] *Id.* (citing *In re Smith*, 4 Vet.App. at 495-96 (noting, "[b]y statute, the fee agreement serves to divide and define the fund of past-due benefits," and the Secretary may recoup an overpayment "from the one to whom it was mistakenly paid")).

sought to recoup the fees (as it did here)—would we describe the appellant's accrued benefits as subject to a "reduction" under section 5112(b)(10). To hold otherwise would stretch the common meaning of "reduction."

Section 5112 read as a whole also supports our interpretation of the specific statutory term "reduction." To start, consider section 5112's heading: "Effective dates of reductions and discontinuances." "Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended."[50] In this case, the relevant section heading primarily demonstrates that Congress intended to focus on timing, specifically when a reduction or discontinuance should go into effect. The subject of the statute's text itself also is "effective date," which further emphasizes this focus on timing—that is, when a reduction or discontinuance in a benefit will take place. We'll recall this focus on timing in our discussion of section 5112(b)(10)'s legislative history below, but in short, timing matters for running award payments, not one-time payments. With running award payments over time, it is quite important to determine when a reduction will take place because there are multiple payment dates on which such a reduction could be implemented. But, as noted above, a one-time payment cannot be undone in the literal sense. Further, even though no one argues that a discontinuance occurred here, Congress's inclusion of discontinuances along with reductions in the same sentence of the statute is meaningful because, if a benefit is subject to a dis*continuance*, it seems natural to assume that the benefit was *continuing* before *dis*continuance. This context suggests that Congress intended the statute to apply to running award payments as opposed to one-time payments because "a one-time payment cannot have its continuity broken."[51]

Next, section 5112(b) specifies that it applies to "a reduction . . . of compensation, [DIC], or pension." The Court notes that each of these benefits is paid monthly; in other words, each is a running award. This word choice implicates a well-known maxim of statutory construction: the expression of one thing implies the exclusion of others.[52] Congress listed "compensation, [DIC], or pension," and not "accrued benefits," as possible subjects of a reduction under this statute.

---

[50] *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, __ U.S. __, __, 138 S. Ct. 883, 893 (2018) (citations and internal quotation marks omitted).

[51] Secretary's Supp. Memo. at 3.

[52] *See N.L.R.B. v. SW Gen., Inc.*, __ U.S. __, __, 137 S. Ct. 929, 940 (2017).

Accrued benefits are conceptually distinct from compensation, DIC, or pension benefits. "Accrued benefits" are elsewhere defined as "periodic monetary benefits (other than insurance and servicemen's indemnity) under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death."[53] At minimum, this exclusion makes us skeptical that Congress intended section 5112 to apply when a purported "reduction" happens with respect to accrued benefits. Congress defined "compensation,"[54] "dependency and indemnity compensation,"[55] and "pension,"[56] all as "monthly payment[s]."[57] Relatedly, when Congress used the term "compensation" in other statutory sections within title 38, it implied the word "monthly,"[58] which corresponds to its common, ordinary meaning as shorthand for a running award of disability compensation paid monthly. Altogether, this is another indication that Congress intended only running award payments, not one-time accrued benefits payments, to be subject to a purported "reduction" under section 5112.[59]

Last of contextual indicia of congressional intent in the provision as whole, section 5112(b)'s subparts (1) through (10) discuss various triggering events for a "reduction or discontinuance": all begin with the phrase "by reason of" followed by different events, such as marriage or a change in income, that could affect a recipient.[60] Subparts (1) through (10) all also describe the particular day that will serve as the effective date in terms of the triggering event. For example, when a recipient gets married, the effective date of a reduction or discontinuance "by reason of" that marriage is the last day of the month before that marriage occurs.[61] This pattern

---

[53] 38 U.S.C. § 5121(a).

[54] 38 U.S.C. § 101(13).

[55] 38 U.S.C. § 101(14).

[56] 38 U.S.C. § 101(15).

[57] "Pension" is "a monthly *or other periodic* payment." *Id.*

[58] *See, e.g.*, 38 U.S.C. § 1114 (setting rates for wartime disability "monthly compensation" where the title said only "rates for wartime disability compensation," leaving out the word "monthly," which then appears in the statute's text).

[59] We express no opinion as to whether section 5112 applies in the context of an award of compensation, DIC, or pension that results in *both* a one-time retroactive payment of past-due benefits and recurring monthly benefits. *Cf. Nolan v. Nicholson*, 20 Vet.App. 340, 348 (2006) (noting that "retroactive awards of disability compensation benefits are considered 'periodic monetary benefits,' even though the actual payment of retroactive benefits is made in a one-time lump sum payment" (quoting 38 U.S.C. § 5121)).

[60] 38 U.S.C. § 5112(b).

[61] 38 U.S.C. § 5112(b)(1).

leads us to expect a similar relationship between the effective date and triggering event at issue in our case, but we hit a snag when we try to apply section 5112(b)(10) to a one-time accrued benefits payment. Remember, section 5112(b)(10) says that "[t]he effective date of a reduction or discontinuance of compensation, [DIC], or pension by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of *last* payment."[62] Based on the pattern found in the earlier subparts, here too we would expect Congress to have derived the effective date from the triggering event—in this case, the date of last payment and an erroneous award based solely on administrative error or error in judgment. We would expect the effective date to be the date of *last* payment *of the erroneous award*. But, here, there is only a single payment of accrued benefits, no more the last than the first. Congress's "last payment" phrasing implies that, when crafting section 5112(b)(10), Congress assumed that there would be more than one benefit payment made. We so construe section 5112(b)(10) to give effect to its word choice, so that its use of "last" isn't rendered superfluous or insignificant when we can give it meaning.[63] Therefore, we have yet another indication that Congress intended only running award payments, not one-time payments, to be subject to a purported "reduction" under section 5112.

Legislative history complements these textual indicia of Congress's intent and the meaning of "reduction."[64] It reveals that Congress's focus on timing (recall our "effective date" discussion above) in section 5112(b)(10) was its policy solution to the problem of balancing innocent parties' interests—running-award recipients' interests versus the taxpayers' interests—in the wake of sole VA error. However, as we'll see, section 5112's solution to address errors that affect running awards is not one-size-fits-all; it's simply inapplicable to erroneous one-time accrued benefits payments.

Congress intended section 5112(b)(10) "to include cases in which an erroneous action was predicated on a misunderstanding of existing instructions or regulations or the applicable construction of statute. Thus, while no overpayment would be created requiring recovery, there

---

[62] 38 U.S.C. § 5112(b)(10) (emphasis added).

[63] *See* SUTHERLAND § 46:6; *see also Splane*, 216 F.3d at 1068-69.

[64] *See Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990) ("[E]ven when the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language.'" (emphasis added by *Glaxo* court) (quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989))).

would be no *perpetuation* of the erroneous action."[65] This rationale indicates that Congress had only running award payments, not one-time payments, in mind when crafting section 5112(b)(10).

The second sentence's structure hints that Congress sought to balance inequities inevitably born by two innocent populations, faultless recipients of running awards and taxpayers. Let's start with benefits recipients. Recipients of running awards, who receive monthly benefits checks, may depend solely or mostly on their VA benefits to live month-to-month, and Congress seemingly thought it unjust for these people to take on liability for returning past overpayments that had been accruing monthly because of mistakes they didn't make or cause. However, these concerns that Congress seemingly had in mind at the time of section 5112(b)(10)'s enactment don't translate well into the context of one-time accrued benefits payments. With a one-time payment, which often represents years' worth of accrued benefits, there's no (or certainly less) chance that overpayment recovery could unjustly impact a recipient's day-to-day finances.[66] In other words, recipients of one-time payments aren't similarly situated to recipients of running award payments. Thus, they don't require the same protections, and it doesn't appear to us that Congress was crafting section 5112(b)(10) to protect one-time payment recipients. Nevertheless, section 5112(b)(10)'s inapplicability to a recipient of a one-time, accrued benefits payment such as the appellant doesn't mean that Congress left those recipients totally unprotected; they can still seek waivers, a subject to which we return in a moment.[67]

Now let's consider taxpayers, the other innocent population implicated in an overpayment caused by VA. By aiming to stop the erroneous action's *perpetuation*, Congress baked a telling premise into its rationale: but for VA's implementation of a reduction or discontinuance, the "erroneous action" at issue would persist indefinitely.[68] And such perpetuation would impose

---

[65] S. REP. NO. 87-2042 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3260, 3266-67 (emphasis added) (explanatory statement of H.R. 7600); *see* H.R. REP. NO. 87-2123 (1962), *not reprinted in* U.S.C.C.A.N.

[66] *Cf. Reizenstein v. Shinseki*, 583 F.3d 1331, 1337 (Fed. Cir. 2009) (holding that the purpose of 38 C.F.R. § 3.343(a), to "protect veterans who are dependent on the monthly compensation that accompanies their total disability rating from a sudden and arbitrary reduction in their benefits that could jeopardize their ability to pay for day-to-day necessities," was not a relevant concern in the context of staged ratings because "the money awarded for a staged rating is compensation for a past period of disability and is independent of the veteran's entitlement to continuing benefits, and is thus significantly less likely to be the veteran's only source of funds for paying current and on-going expenses").

[67] *See* 38 U.S.C. § 5302.

[68] "Perpetuate" means "to make perpetual or cause to last indefinitely," and "perpetual" means "continuing forever; occurring continually; indefinitely long-continued." MERRIAM-WEBSTER, https://www.merriam-

indefinitely lasting liability on taxpayers for the overpayments, which Congress sought to curb with a simple correction device. Congress's solution easily applies to and makes sense in the context of running award payments. But if we consider this "solution" instead in the context of an error in a one-time payment, we have a square-peg-round-hole situation. We wouldn't characterize VA's failure to withhold attorney fees in this case as an error persisting indefinitely, month after month, but for a "reduction." Describing VA's failure as a discrete, one-time error, correctable via the creation of an overpayment, is much more natural. In sum, legislative history supports our conclusion that section 5112(b)(10)'s protection wasn't meant to address the appellant's situation.[69]

The conclusion we reach in this matter may seem harsh. Looking just at section 5112, one might think that we have interpreted the law in such a way as to reach an absurd result, something we must avoid.[70] Why would Congress leave someone such as the appellant without protection? The answer is that Congress did no such thing. As we have explained, Congress provided protection in section 5112 for a certain type of situation, the reduction or discontinuance of certain VA benefits that are paid monthly. But it provided a far more general type of protection for all benefits recipients who are the subject of the creation of an overpayment, what we have alluded to briefly elsewhere: waiver.[71]

Protecting all benefit payees, Congress provided in relevant part: "There shall be no recovery of payments or overpayments (or any interest thereon) of any benefits under any of the laws administered by the Secretary whenever the Secretary determines that recovery would be against equity and good conscience . . . ."[72] Thus, there is no absurdity in interpreting section 5112 to be inapplicable to the appellant's situation. Congress there was concerned with a subset of the population that could be affected by an erroneous VA action—recipients of running award payments. But for all persons subject to repayment of an obligation, Congress provided section 5302. As the appellant's counsel stated at oral argument, the appellant consciously chose not to

---

webster.com/dictionary (last visited May 23, 2019).

[69] The appellant discusses section 5112's legislative history as if one of Congress's purposes was to teach VA lessons. *See* Appellant's Response at 2. But nothing in the legislative history indicates such a purpose. Congress in no way hints that it had punishment of VA in mind when it wrote a law administering VA benefits.

[70] *See Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

[71] *See* 38 U.S.C. § 5302.

[72] 38 U.S.C. § 5302(a).

seek waiver and to proceed only under section 5112.[73] Such a choice based on advice of counsel does not render the result here absurd as a matter of statutory interpretation.

In sum, we hold that section 5112(b)(10) doesn't apply in the appellant's case so as to make VA's creation of an overpayment improper because no "reduction" of "compensation, [DIC], or pension" as contemplated by section 5112(b)(10) occurred. The plain meaning of section 5112(b)(10)'s surrounding text, statutory context, and legislative history all support this conclusion. Because there was no reduction of an ongoing monthly benefit, we need not consider whether there was an erroneous award or whether, as the appellant argues, the overpayment was solely the result of administrative error. Moreover, contrary to the appellant's framing of the issues,[74] the Board's reasons or bases were adequate here; we can review this Board decision effectively and think the Board explained its actions sufficiently to enable the appellant to understand its precise bases for concluding that the overpayment was properly created.[75]

### III. CONCLUSION

After consideration of the parties' briefs, oral argument, the record on appeal, and the governing law, the Court AFFIRMS the March 22, 2017, Board decision.

---

[73] O.A. at 55:58-58:27.

[74] *See generally* Appellant's Initial Brief.

[75] *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).